TEAMSTERS JOINT COUNCIL No. 10 & others[1] *vs.* DIRECTOR OF
THE DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT
& others.[2]

Suffolk. April 3, 2006. - June 23, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Relief in the nature of certiorari. *Administrative Law,* Judicial
review. *Public Works,* Wage determination. *Statute,* Construction.

Discussion of the standard employed by an appellate court in reviewing a
  decision of the deputy director of the division of occupational safety
  regarding the prevailing wage law, G. L. c. 149, §§ 1, 26-27F. [106-107]
A decision of the deputy director of the division of occupational safety,
  determining that the prevailing wage law, G. L. c. 149, §§ 1, 26-27F, did
  not cover time spent by certain truck drivers traveling to and from public
  construction projects, was neither arbitrary nor capricious, where the deci-
  sion, which was entitled to deference, constituted a reasonable interpreta-
  tion of the statute and reflected the deputy director's permissible conclu-
  sion that a prior interpretation of the statute to the contrary was wrong.
  [107-111]

[1]Massachusetts Building and Construction Trades Council, Teamsters Local
Union No. 25, Teamsters Local Union No. 42, Teamsters Local Union No. 49,
Teamsters Local Union No. 59, Teamsters Local Union No. 170, Teamsters
Local Union No. 251, Teamsters Local Union No. 379, Teamsters Local
Union No. 404, and Teamsters Local Union No. 653.

[2]Deputy director of the division of occupational safety; Palmer Paving
Corporation; Aggregate Industries, Inc.; Construction Industries of Mas-
sachusetts; and Massachusetts Aggregate & Asphalt Pavement Association.

We acknowledge the amicus brief of Utility Contractors Association of
New England, Inc.; The Middlesex Corporation, Inc.; Boston Sand & Gravel
Co.; Lawrence Ready Mix; Rosenfeld Concrete; Southeastern Concrete; Tresca
Brothers Sand & Gravel, Inc.; J.G. MacLellan Concrete Co., Inc.; Granite
State Concrete Co., Inc.; Boro Sand & Stone Corp.; and Chicopee Concrete
Service, Inc. However, as we stated in *Matter of the Receivership of Harvard
Pilgrim Health Care, Inc.,* 434 Mass. 51, 57 (2001), "an amicus is not permit-
ted to enter the picture on appeal with party status, but is allowed to assist the
appellate court by way of offering information and legal argument. Usually
such argument is limited to only those issues addressed by the parties." Thus
we consider the argument of amici only as it pertains to the issues before this
court.

CIVIL ACTION commenced in the Superior Court Department on September 19, 2001.

The case was heard by *Patrick J. Riley*, J., on motions for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Mark D. Nielsen*, Special Assistant Attorney General (*Kathryn B. Palmer*, Special Assistant Attorney General, with him) for Department of Labor & another.

*John D. O'Reilly, III*, for Palmer Paving Corporation & others.

*Paul F. Kelly* for the plaintiffs.

*Richard D. Wayne & Willard Krasnow*, for Utility Contractors Association of New England, Inc., & others, amici curiae, submitted a brief.

IRELAND, J. In 2001, the defendant businesses and organizations challenged a 1993 Department of Labor and Industries (department)[3] policy, applicable to public construction contracts, that the prevailing wage law, G. L. c. 149, §§ 26-27F, covered the time spent by truck drivers hauling bituminous concrete[4] to and from the construction site (road time). The deputy director of the division of occupational safety (division) conducted a public hearing and, in a written decision dated August 21, 2001, concluded that the prevailing wage law did not cover drivers' road time, rescinding the 1993 policy. The plaintiffs, all labor organizations whose representatives include truck drivers who haul bituminous concrete and ready-mix concrete to public construction projects, sought review of the decision, and a Superior Court judge entered a declaration in the plaintiffs' favor. The defendants appealed, and we transferred this case here on our own motion. Because we conclude that the plaintiffs did not meet their burden to show that the decision of the deputy

---

[3]Since 1993 the department has been reorganized or renamed several times. See St. 1993, c. 110, § 71 ("department of labor and industries"); St. 1996, c. 151, § 111 ("department of labor and workforce development"); St. 2003, c. 26, § 554 ("department of labor").

[4]Bituminous concrete, also known as asphalt, "is a mixture of sand and stone held together by a very heavy crude oil which acts as a glue." *Construction Indus. of Mass.* v. *Commissioner of Labor & Indus.*, 406 Mass. 162, 163 (1989) (*Construction Industries*).

director was arbitrary or capricious, and because we grant due deference to the deputy director's interpretation of the prevailing wage statute, we vacate the judgment of the Superior Court.

*Statutory scheme.* The director (or commissioner)[5] of the department administered the prevailing wage law, G. L. c. 149, §§ 1, 26-27F, through the division. G. L. c. 23, §§ 1-3. Under the prevailing wage law, the director establishes the hourly rate of wages for "mechanics and apprentices, teamsters, chauffeurs and laborers" who are employed in the construction of public works. G. L. c. 149, § 26.[6] The director prepares a list of the jobs usually performed on public works projects and, when requested, assigns to each job the minimum wage that must be paid to persons performing that job. G. L. c. 149, § 27.[7] Section 27A of c. 149, provides an administrative mechanism for review

---

[5] The department head has been designated the commissioner (see St. 1993, c. 110, § 72), the director (see St. 1996, c. 151, §§ 111, 112; St. 2003, c. 26, § 554), or both, see G. L. c. 23, § 4. General Laws c. 149, § 1, has defined "[c]ommissioner" as "the commissioner of labor and industries" (St. 1993, c. 110, § 167); "the director of labor and workforce development" (St. 1996, c. 151, § 365); and "the director of the department of labor" (St. 2003, c. 26, § 575). We refer to the commissioner as designated in 1993 and the director thereafter.

[6] General Laws c. 149, § 26, provides, in pertinent part:

"In the employment of mechanics and apprentices, teamsters, chauffeurs and laborers *in the construction of* public works by the commonwealth, or by a county, town, authority or district, or by persons contracting or subcontracting for such works . . . [t]he rate per hour of the wages paid . . . *in the construction of* public works shall not be less than the rate or rates of wages to be determined by the commissioner as hereinafter provided; provided, that the wages paid to laborers employed *on said works* shall not be less than those paid to laborers in the municipal service of the town or towns where said works are being constructed . . . ." (Emphasis added.)

[7] General Laws c. 149, § 27, provides in pertinent part:

"The commissioner shall prepare, for the use of such public officials or public bodies whose duty it shall be to cause public works to be constructed, a list of the several jobs usually performed *on* various types of public works *upon which* mechanics and apprentices, teamsters, chauffeurs and laborers are employed, including the transportation of gravel or fill to the site of said public works or the removal of surplus gravel or fill from such site. The commissioner shall classify said jobs, and he may revise said classification from time to time, as he may

of the commissioner's wage determinations and classifications of employment. There is no provision for appeal from a decision made pursuant to § 27A.[8] Violators of the prevailing wage law may be punished by a fine, imprisonment, or both. G. L. c. 149, § 27C. The Attorney General is charged with the law's enforcement. G. L. c. 149, § 27.

*Background and procedure.* In 1993, the commissioner (St. 1993, c. 110, § 72) issued a policy statement that teamsters who hauled bituminous concrete, ready-mix concrete, and

> deem advisable. Prior to awarding a contract for the construction of public works, said public official or public body shall submit to the commissioner a list of the jobs upon which mechanics and apprentices, teamsters, chauffeurs and laborers are to be employed, and shall request the commissioner to determine the rate of wages to be paid on each job. Said rates shall apply to all persons engaged in transporting gravel or fill to the site of said public works or removing gravel or fill from such site, regardless of whether such persons are employed by a contractor or subcontractor or are independent contractors or owner-operators. The commissioner, subject to the provisions of [§ 26], shall proceed forthwith to determine the same, and shall furnish said official or public body with a schedule of such rate or rates of wages as soon as said determination shall have been made. In advertising or calling for bids for said works, the awarding official or public body shall incorporate said schedule in the advertisement or call for bids . . . and shall furnish a copy of said schedule, without cost, to any person requesting the same. Said schedule shall be made a part of the contract for said works and shall continue to be the minimum rate or rates of wages for said employees during the life of the contract." (Emphasis added.)

The provisions regarding persons transporting or removing "gravel or fill" were inserted by the Legislature in 1973. See St. 1973, c. 625, § 1.

[8]General Laws c. 149, § 27A, provides:

> "Within five days from the date of the first advertisement or call for bids, two or more employers of labor, or two or more members of a labor organization, or the awarding officer or official, or five or more residents of the town or towns where the public works are to be constructed, may appeal to the commissioner or his designee from a wage determination, or a classification of employment as made by the commissioner, by serving on the commissioner a written notice to that effect. Thereupon the commissioner or his designee shall immediately hold a public hearing on the action appealed from. The commissioner or his designee shall render his decision not later than three days after the closing of the hearing. The decision of the commissioner or his designee shall be final and notice thereof shall be given forthwith to the awarding official or public body."

104                        447 Mass. 100 (2006)

Teamsters Joint Council No. 10 *v.* Director of the Dept. of Labor and Workforce Development.

"jersey barriers" were covered by the prevailing wage law both for their road time as well as for their time at the construction site.[9] In addition to the prevailing wage law, the commissioner cited our decision in *Construction Indus. of Mass.* v. *Commissioner of Labor & Indus.*, 406 Mass. 162 (1989) (*Construction Industries*), as authority for the policy.

Consistent with the 1993 policy, in July, 2001, in connection with a Massachusetts Highway Department construction project, the division issued wage rate sheets that included road time for drivers hauling bituminous concrete. The defendant businesses and organizations then filed an appeal pursuant to G. L. c. 149, § 27A, contesting the application of the prevailing wage law to the drivers' road time. After a public hearing conducted in accordance with G. L. c. 149, § 27A, the deputy director issued his written decision, which rescinded the 1993 policy, ruling that:

> "Drivers who deliver bituminous concrete or ready mix concrete to public construction projects . . . are covered by the prevailing wage law while they are on-site at the public construction project. Those drivers are not covered by the prevailing wage law while off-site, including over-the-road driving and picking-up materials. All drivers who operate trucks on public construction sites as part of the construction work are covered by the prevailing wage law while they are on-site."[10]

In his decision, the deputy director stated that, since the *Construction Industries* opinion, "bituminous drivers have been undisputedly covered by the prevailing wage law while at the work site," but noted that the court's decision did not address whether drivers of bituminous concrete are entitled to receive

---

[9]This appeal concerns only whether the statute covers road time for truck drivers of bituminous concrete.

[10]Before the hearing, the division solicited testimony concerning the applicability of the prevailing wage law to the road time spent by ready-mix concrete drivers. In his decision, the deputy director noted that testimony was received in opposition to the inclusion of ready-mix drivers, but that "the opponents to the scope of the hearing failed to present any reasoning as to why the work of ready-mix drivers is dissimilar to the work of bituminous drivers and should be treated singularly." The decision included ready-mix drivers, but this appeal pertains only to drivers of bituminous concrete.

prevailing wage rates for road time. Because the prevailing wage law repeatedly references the employment of workers "on said works," with the exception of drivers who haul gravel or fill, the deputy director concluded that "[a]ny regulation of the wages of off-site workers, except drivers who haul gravel or fill, is an expansion of the statute's applicability beyond its clearly stated scope." The deputy director also concluded that the 1993 policy was not a correct interpretation of the intent of the prevailing wage statute. He further noted that his conclusion was consistent with the Federal prevailing wage law that covers workers' on-site time only.

The plaintiffs sought review of the deputy director's decision in the Superior Court. The plaintiffs sought declaratory relief under G. L. c. 231A and relief in the nature of a writ of certiorari pursuant to G. L. c. 249, § 4.[11] The parties filed cross motions for judgment on the pleadings. A Superior Court judge allowed the plaintiffs' motion for judgment on the pleadings and denied the State defendants' cross motion. The judge ordered the entry of a judgment declaring that the director "is empowered and indeed duty bound to set wages pursuant to G. L. c. 149, §§ 26-27F, for the over-the-road hours of teamsters who haul bituminous or ready-mix concrete provided said hours and said teamsters have substantial connection or nexus with the site of public construction."[12]

The defendants filed notices of appeal. A single justice of the

---

[11]The plaintiffs also had included a count under G. L. c. 30A, but it was dismissed on the State defendants' motion to dismiss by another Superior Court judge, who concluded that judicial review in the nature of certiorari under G. L. c. 249, § 4, is an appropriate remedy. There was no appeal.

[12]In reaching his conclusion, the judge stated that the deputy director's interpretation of the terms "on" and "upon" in the statute were "too wooden." The judge emphasized that the "significant nexus" required under the *Construction Industries* decision connotes more than mere physical presence. A "significant connection" is also required, which the judge found to be undisputed due to the "integral" role played by these truck drivers. In addition, the judge stated that "the plain requirement of [§§ ] 26 and 27 is that the director set wages for the entire job these teamsters perform not just the onsite hours." The judge concluded that to uphold the deputy director's decision would frustrate the statute's purpose of protecting teamsters from substandard earnings because the nature of the teamsters' jobs "prevents them from being physically present on the work site throughout the entire work day," and would result in a "two tiered pay scale," an "absurd and unfair" result. Last,

Appeals Court entered a stay of the Superior Court judgment pending appeal.

*Standard of review.* Because the prevailing wage law contains no provision for judicial review of a decision of the director or his designee, G. L. c. 149, § 27A ("The decision of the [director] or his designee shall be final"), the plaintiffs' resort to certiorari was not inappropriate. See *School Comm. of Franklin v. Commissioner of Educ.*, 395 Mass. 800, 807 & n.6 (1985) ("[r]esort to certiorari may not be had if another adequate remedy is available"). See also *Massachusetts Bay Transp. Auth. v. Auditor of the Commonwealth*, 430 Mass. 783, 790 (2000), quoting *Carney v. Springfield*, 403 Mass. 604, 605 (1988) (G. L. c. 249, § 4, provides limited judicial review to correct substantial error of law affecting material rights). "The standard of review for an action in the nature of certiorari depends on 'the nature of the action sought to be reviewed.' " *Black Rose, Inc. v. Boston*, 433 Mass. 501, 503 (2001), quoting *Boston Edison Co. v. Boston Redevelopment Auth.*, 374 Mass. 37, 49 (1977). Although *Felix A. Marino Co. v. Commissioner of Labor & Indus.*, 426 Mass. 458, 464 (1998), did not address directly the proper avenue to obtain review of a decision of the commissioner (or his designee) under G. L. c. 149, § 27A, it stated that because the plaintiff in that case challenged the commissioner's decision "[b]y allegations in the nature of a petition for a writ of certiorari," the plaintiff had to establish that the decision was arbitrary or capricious. See *Receiver of the Boston Hous. Auth. v. Commissioner of Labor & Indus.*, 396 Mass. 50, 58 (1985) (wage rate determination subject to arbitrary or capricious standard). A decision is not arbitrary or capricious unless there is no ground which "reasonable [people] might deem proper" to support it. *Cotter v. Chelsea*, 329 Mass. 314, 318 (1952). "We give great deference to the [agency's] expertise and experience in areas where the Legislature has delegated to it decision making authority . . . ." *Box Pond Ass'n v. Energy Facilities Siting Bd.*, 435 Mass. 408, 412 (2001), quoting *Wolf*

the judge reasoned that, "by including the term 'teamsters' within the statute, the Legislature meant professional truck drivers and also understood that the nature of the occupation involved a substantial amount of driving to and from a public work site."

447 Mass. 100 (2006) 107

Teamsters Joint Council No. 10 v. Director of the Dept. of Labor and Workforce Development.

v. *Department of Pub. Utils.*, 407 Mass. 363, 367 (1990). Moreover, we accord no special weight to the decision of the Superior Court judge in reviewing the record before the deputy director. *Doe* v. *Superintendent of Schs. of Stoughton*, 437 Mass. 1, 5 (2002).

*Discussion.* The plaintiffs argue that the Superior Court judge was correct in concluding that the decision of the deputy director was arbitrary and capricious[13] because the statute covers road time for haulers of bituminous concrete. In support of their assertion, the plaintiffs rely on this court's opinion in *Construction Industries*. We disagree.

In *Construction Industries*, *supra* at 163, the plaintiffs, two trade associations and four truck owners, sought a declaration that the commissioner lacked authority under the prevailing wage law to set wages for truck drivers who deliver bituminous concrete to public works construction sites. After defining bituminous concrete, the court explained how it is used in the construction of roads and highways:

"The manufacture of bituminous concrete takes place at either a stationary plant, from which it is then transported to the construction site or, in some cases, at portable on-site plants. In either case, the bituminous concrete is hauled by truck from the site of manufacture to the location where it is laid down. The role of the truck driver is the same whether the bituminous concrete is manufactured on the site or at a stationary plant. After loading the truck, the driver proceeds to the application site. The driver then backs the truck up to a device called a spreader and dumps the concrete into the spreader's hopper. The spreader is

[13]The State defendants argue that the Superior Court judge erroneously conducted a de novo review of the case, instead of conducting review pursuant to G. L. c. 249, § 4 (certiorari), to determine whether the deputy director's decision was arbitrary or capricious. While the judge refused to extend any deference to the deputy director's decision because he viewed the issue as a matter of statutory construction solely for the court, he did conclude that the decision was arbitrary or capricious due to the "absurd" results it creates (a two-tiered pay scale for the teamsters and a limitation on their pay where the nature of the job prevents them from being present on the worksite throughout the entire day). Thus, while deference to the deputy director's decision should have been extended, the ultimate relevant inquiry, whether the decision was arbitrary or capricious, was followed.

used to lay the concrete down evenly. A 'roller' follows the spreader and compacts the layer of bituminous concrete.

> "It usually takes several 'lifts' to empty a truck. . . . The truck driver continues to dump concrete into the spreader until his truck is empty. He then leaves the site, fills the truck again, returns to the site, and repeats the entire process. During the dumping and spreading procedure, the truck driver takes directions from the spreader operator and the foreman. It takes from five to fifteen minutes to complete the process and empty the truck."

*Id.* at 164. The court stated: "It is beyond dispute that the truck drivers at issue are 'teamsters' [for purposes of G. L. c. 149, §§ 26-27]." *Id.* at 167. However, based on limiting language in the statute, the court went on to explain:

> "Quite clearly, the commissioner has not been given authority to set wages for all teamsters who have any connection with a public works project. . . . [T]he limits of the commissioner's authority to set wages . . . are governed by the physical locus of the work site itself and the work which is performed there. The commissioner is empowered to set wages for teamsters when there is a significant nexus between the work those teamsters perform and the site of the construction project. In simple terms, the commissioner must ask, 'What do they do at the site?' When the performance of a statutorily specified job has a significant connection with the construction project, then that job falls within the domain of the posted wage law statute."

*Id.* at 168. The court concluded that the commissioner had authority "to set wages for the teamsters employed by the plaintiffs who haul bituminous concrete to public works projects and then aid in its installation," noting that the truck drivers are more than "materialmen" because "they work with the road crew to spread the bituminous concrete," thus rendering their activities "an essential part of the work done at the site." *Id.* at 168, 169. Therefore, the decision affirmed that the commissioner has fairly broad policy-making authority because the

Legislature delegated the details of how the prevailing wage law should be applied, subject to certain limits. *Id.* at 168, 173. Most importantly, nowhere in the *Construction Industries* case did the court address whether the wage rates that the commissioner had authority to set included road time.

In further reliance on *Construction Industries, supra,* the plaintiffs argue that the deputy director erred because the prevailing wage law is not ambiguous. Thus, they argue, the decision of the deputy director is entitled to no deference. The plaintiffs read too much into the court's statements that the statute is not ambiguous. *Id.* at 168, 169 n.5. As discussed, the issue whether road time was covered was not addressed. In addition, the court's conclusion concerning the clarity of the statute's language was made in the context of the commissioner's authority to set wages for teamsters whose work had a significant connection with the work site.[14] The opinion does not assist the plaintiffs' argument. See generally *Felix A. Marino Co.* v. *Commissioner of Labor & Indus.,* 426 Mass. 458, 461 (1998) ("word 'construction' in § 26 is ambiguous standing alone"). Moreover, the plain language of the statute does not refer to road time. See notes 6 and 7, *supra.* Accordingly, the decision in this case is entitled to deference because the

---

[14]The two statements on which the plaintiffs rely are as follows:

> "The commissioner is empowered to set wages for teamsters when there is a significant nexus between the work those teamsters perform and the site of the construction project. In simple terms, the commissioner must ask, 'What do they do at the site?' When the performance of a statutorily specified job has a significant connection with the construction project, then that job falls within the domain of the posted wage statute."

*Construction Industries, supra* at 168.

> "General Laws c. 149, §§ 26 and 27, are not ambiguous. The plain requirement of these provisions is that the commissioner set wage rates for teamsters (among others) whose work has a significant connection with the work site."

*Id.* at 169 n.5.

The latter conclusion was in the context whether, because of the maxim that an ambiguous penal statute should be construed narrowly, drivers who hauled bituminous concrete should be excluded from the statute's reach altogether. *Id.*

Legislature has delegated decision-making authority to the commissioner. *Box Pond Ass'n* v. *Energy Facilities Siting Bd.*, 435 Mass. 408, 412 (2001). G. L. c. 149, §§ 26-27F. See *Felix A. Marino Co.* v. *Commissioner of Labor & Indus.*, *supra* (where question whether work fell under G. L. c. 149, §§ 26-27H, "fairly debatable," deference to commissioner's discretion required).

In concluding that the statute did not cover road time, the deputy director relied on the words in the statute " 'on said works,' 'upon [public works projects],' and 'on various types of public works.' " To support his exclusion of road time, he also noted that G. L. c. 149, § 27, contained a single specific exception for individuals who transport "gravel or fill to the site of said public works or remov[e] gravel or fill from such site." Discussing the rule of statutory construction stated in *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975) ("a statutory expression of one thing is an implied exclusion of other things omitted from the statute"), the deputy director concluded that the Legislature intended that only haulers of gravel and fill would be covered for road time. These are reasonable grounds for interpreting the statute. We do not impose our own judgment where an agency's interpretation of a statute is reasonable. *Massachusetts Med. Soc'y* v. *Commissioner of Ins.*, 402 Mass. 44, 62 (1988). We conclude that the decision was not arbitrary or capricious.[15]

The plaintiffs argue that, even if the decision of the deputy director is entitled to deference, the decision is still arbitrary or capricious because covering road time under the prevailing wage statute has been a policy for twenty-five years. See *Cleary*

---

[15]The plaintiffs further argue that the *Construction Industries* case rendered the deputy director's reliance on the rule of statutory construction "a bald attempt to relitigate a matter of settled law." See *id.* at 169 (court need not address rule of statutory construction that expression of one thing implies exclusion of other things because "we think the plaintiffs' fundamental assumption that [teamsters] are mere materialmen is mistaken"). We decline to address this argument because, even if the plaintiffs are correct, the deputy director's reliance on the statute's language alone provides reasonable grounds for his interpretation. For the same reason, we need not address the parties' arguments concerning the deputy director's consideration whether his interpretation of the prevailing wage law aligned with the Federal wage statute, 40 U.S.C. § 3141 (2000 & Supp. II 2002).

v. *Cardullo's, Inc.*, 347 Mass. 337, 343-344 (1964) ("Significance in interpretation may be given to a consistent, long continued administrative application of an ambiguous statute," but interpretation or regulation may not conflict with statute). The plaintiffs point to nothing in the record that demonstrates that the policy of covering drivers of bituminous concrete for road time existed before the 1993 policy.[16] Indeed, the 1993 document itself indicates that it is a new policy. It has an effective date of July 1, 1993, and states that the policy would "not apply to on-going investigations or projects out to bid or award before the effective date." As discussed, the 1993 policy relied on the statute as well as the *Construction Industries* case, which we have concluded did not address the issue whether road time was covered. It was not arbitrary or capricious for the deputy director, after analyzing the statute's language, to conclude that in setting the 1993 policy, the then "commissioner expanded his authority under the statute beyond its plain meaning." "[T]he commissioner is charged with the implementation of the prevailing wage law," *Felix A. Marino Co.* v. *Commissioner of Labor & Indus.*, *supra* at 460, the statute makes his decisions final, and the deputy director changed the policy through a public hearing pursuant to the appeal process in § 27. See *Commissioner of Revenue* v. *BayBank Middlesex*, 421 Mass. 736, 741-742 (1996) ("commissioner's expertise in tax matters might even bring the commissioner to the conclusion that a prior interpretation of a statute or regulation was wrong and should be changed").[17]

*Conclusion.* For the reasons set forth above, the judgment of the Superior Court judge is vacated. A new judgment shall enter declaring that the decision of the deputy director that the prevailing wage law does not cover the over-the-road time of drivers

---

[16]In support of their contention, they rely on *Construction Industries, supra* at 164-165, where the court stated: "Since at least 1976, the commissioner has considered those truckers who haul bituminous concrete to the site of public works projects and aid in the application of that concrete, to be teamsters employed on those sites." However, there is nothing that indicates that teamsters who haul bituminous concrete were covered for their road time since 1976.

[17]In light of our conclusion, we need not address the parties' differing public policy arguments.

of bituminous concrete was not arbitrary or capricious and is, therefore, affirmed.

*So ordered.*