NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

16-P-229                                     Appeals Court

ADRIAN NILES  vs.  HUNTINGTON CONTROLS, INC., & another.[1]


No. 16-P-229.

Norfolk.      January 12, 2017. - July 31, 2017.

Present:  Kafker, C.J., Hanlon, & Agnes, JJ.


Practice, Civil, Summary judgment. Labor, Public works, Wages.
    Public Works, Wage determination. Administrative Law, Wage
    administration.


    Civil action commenced in the Superior Court Department on
November 22, 2013.

    Motions for summary judgment were heard by Thomas A.
Connors, J.


    Joseph L. Sulman for the plaintiff.
    Stephen P. Kolberg for the defendants.


    AGNES, J.  The Massachusetts prevailing wage law, G. L.

c. 149, §§ 26-27 (prevailing wage law), is designed "to achieve

parity between the wages of workers engaged in public

construction projects and workers in the rest of the

construction industry."  Mullally v. Waste Mgmt. of Mass., Inc.,

_____

    [1] Paul Milano.

452 Mass. 526, 532 (2008). Under this law, the "rate per hour of the wages" paid to "mechanics and apprentices, teamsters, chauffeurs and laborers in the construction of public works" may not be less than "the rate or rates of wages" determined by the commissioner of the Department of Labor Standards (department). G. L. c. 149, § 26, as amended by St. 1967, c. 296, § 3. The commissioner determines the minimum rate by preparing a classification of "the jobs usually performed on various types of public works" by "mechanics and apprentices, teamsters, chauffeurs and laborers" employed in such construction. G. L. c. 149, § 27, as amended by St. 1967, c. 296, § 4.[2] The commissioner is authorized to "revise such classification from time to time, as he may deem advisable." G. L. c. 149, § 27, as inserted by St. 1935, c. 461, § 27.

In the present case, Adrian Niles filed a four-count complaint in the Superior Court alleging a violation of the prevailing wage law (count one), breach of contract (count two), breach of the covenant of good faith and fair dealing (count three), and unjust enrichment (count four). The judge allowed a

---

[2] The commissioner carries out this responsibility based on data received annually from the public officials or public bodies awarding contracts for the construction of public works who must submit to the commissioner "a list of the jobs upon which mechanics and apprentices and laborers are to be employed" and who must request that the commissioner "update the determination of the rate of wages to be paid on each job." G. L. c. 149, § 27, as inserted by St. 2008, c. 303, § 21.

motion for summary judgment filed by the defendants, Huntington Controls, Inc., and its president, Paul Milano (collectively, Huntington), on all four counts and denied Niles's cross motion for partial summary judgment on liability under count one. Niles appealed. The sole question presented is whether the judge was correct in ruling that Huntington did not violate the prevailing wage law because none of the work performed by Niles for Huntington was subject to the prevailing wage law. We conclude that the judge erred in failing to give appropriate deference to opinion letters issued by the department that stated that the work performed by a heating, ventilation, and airconditioning (HVAC) technician such as Niles, who, while onsite, installs software in HVAC components and then tests those components to ensure that they operate properly, is employment "in the construction of public works" and thus is subject to the prevailing wage law. Because it is undisputed on the record before us that at least some of the hours worked by Niles for Huntington involved such activity, it was error to deny his motion for partial summary judgment and to grant summary judgment to Huntington on count one.[3]

Background. The essential facts are not in dispute. In September, 2009, Niles began working for Huntington as a non-

_____

[3] The plaintiff does not dispute the entry of summary judgment for Huntington on the remaining three counts.

union, full-time HVAC "controls technician."[4]  For approximately three years, Niles worked primarily on two of Huntington's public construction projects:  the Sharon Middle School and the Parker Elementary School.  He worked approximately 3,200 hours between those projects, for which Huntington paid him thirty-four dollars per hour from September, 2009, to October, 2012, and thirty-six dollars per hour from October, 2012, to October, 2013, when he voluntarily left Huntington's employment.

Although the parties do not agree as to all the work activities that were performed by Niles as an HVAC technician, it suffices to say, as the judge below recognized, that at least some of the duties he performed were onsite and included downloading programs to the HVAC system controllers and performing certain tests required to ensure the controllers worked properly.  For example, Niles would use a program to turn exhaust fans on and off, in order to ensure that they operated as intended when they received the proper signals.  There is evidence that occasionally he would "switch out" a malfunctioning component with one that worked.[5]  It is undisputed

---

[4] The record supports the observation made by the judge below that the plaintiff's job description "changed over the course of his employment.  Controls technician is not used here to indicate any type of job classification for determining whether Niles should have been paid the prevailing wage."

[5] The defendants argue that any replacement of components done by the plaintiff was "unlicensed and illegal" and in

that the majority of the hours Niles worked on the two school projects were identified by Huntington as work performed under the service code "1-003, Tech/Commissioning."[6]  It is also undisputed that he performed this work on those systems after the components were installed and wired by the electricians, but before they were turned over to the customer for operation. There was evidence that another subcontractor also performed testing services after Huntington completed its work.

At least once, prior to turning over the systems to the customer, Huntington required Niles to be onsite to "go over our punch list [items] and functionally test our systems."  On that occasion, he was requested by name to be onsite to "go through the systems with [his supervisor]" and "to be available to correct any issues we find."  From the record, it is undisputed that any system Niles worked on would not be turned over to the customer until fully tested and operational.  However, this work

---

contravention of Huntington's express instructions.  However, Huntington does not deny that Niles did the work, and the record contains no similar objections contemporaneous with Niles's reports of doing such work that would indicate that, at the time, they felt that he should not do so.  In fact, Milano testified at his deposition that while such work was not the regular work of a "control technician," Niles was "trying to get things done," which was encouraged by the defendants.

[6] In order to identify the type of work being performed, Huntington uses a series of service codes on its employees' time sheets.  Code "1-003, Tech/Commissioning" is defined as an employee working on "prefunctional testing."  What constitutes such testing is not further defined.

did not comprise the totality of Niles's duties, and there is evidence that his job duties entailed work other than that described above. For example, Niles's job description, as provided by Huntington, also included duties such as "trains customers on system operations," and "works with equipment vendors to coordinate communication protocols." The record is not clear as to exactly how much of Niles's job consisted of the technician work described above, and how much was not.[7]

Discussion. 1. Standard of review. We review a grant of summary judgment de novo, Federal Natl. Mort. Assn. v. Hendricks, 463 Mass. 635, 637 (2012), to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). "The entry of summary judgment will be upheld when there are no genuine issues of material fact and the nonmoving party 'has no reasonable expectation of proving an essential element of its

---

[7] Tasks such as training customers and working with vendors are not considered work subject to the prevailing wage law. The June 11, 2008, opinion letter, discussed infra, states that duties such as "maintaining inventory" and "customer contacts" are "clearly not prevailing wage work." However, in assessing the issue of liability under count one, we need only conclude that the undisputed facts show that at least some of Niles's work fell under the prevailing wage law. See Teamsters Joint Council No. 10 v. Director of the Dept. of Labor & Workforce Dev., 447 Mass. 100, 108-109 (2006).

case.'"  Okerman v. VA Software Corp., 69 Mass. App. Ct. 771,

780-781 (2007), quoting from Miller v. Mooney, 431 Mass. 57, 60

(2000).  In deciding a motion for summary judgment the court may

consider the pleadings, depositions, answers to interrogatories,

admissions on file, and affidavits.  Community Natl. Bank v.

Dawes, 369 Mass. 550, 553 (1976).

    2.  The department's opinion letters.  The commissioner

sets the prevailing wages based on "collective agreements or

understandings in the private construction industry between

organized labor and employers."  G. L. c. 149, § 26, as amended

by St. 1986, c. 665.  In addition, the commissioner looks to

such agreements to determine the appropriate job classifications

under the prevailing wage law.  Commissioner of Labor & Indus.

v. Worcester Hous. Authy., 8 Mass. App. Ct. 303, 307 (1979).

The schedule of wage rates established by the commissioner must

be attached to advertisements for bids on every public works

project.[8]  Lighthouse Masonry, Inc. v. Division of Administrative

Law Appeals, 466 Mass. 692, 697 (2013).

---

    [8] "Before soliciting bids for any public construction
project an awarding authority must obtain a prevailing wage rate
sheet from DLS [Department of Labor Standards].  Each prevailing
wage rate sheet applies only to the public construction project
for which it is issued. The prevailing wage rates for each
construction project are in effect for [ninety] days from the
date of issue.  Projects not bid within [ninety] days of the
issued rates will require the awarding authority to request new
prevailing wage rates."  A Guide to the Massachusetts Prevailing
Wage Law for Contractors, http://www.mass.gov/lwd/labor-

The department, in response to inquiries, issues opinion letters stating whether certain jobs are subject to the prevailing wage law.[9]  The department issued one such opinion letter on June 11, 2008, in response to an inquiry whether the prevailing wage law applied to a company's HVAC control technicians.  The job description at issue stated that a controls technician was responsible for "repair and modification of environmental-control systems, utilizing knowledge of electronics, direct digital control, HVAC theory, and control applications."  In relevant part, the letter stated:

> "As we understand it, after a new system has been installed, or an existing system is replaced in whole or in part, the system must undergo testing, adjusting and balancing (TAB), and commissioning (in the case of a new system) or re-commissioning (in the case of a replacement project). . . . The important point seems to be that installation or replacement of a system involves much more than simply installing a 'system' and cleaning up. Such construction work is incomplete unless the owner has the assurance that the system purchased actually works as designed, and this assurance is provided by both the TAB and commissioning processes. Therefore, this agency will consider installation/replacement, TAB, and recommissioning and commissioning of an HVAC system to be all part of the same 'construction' work within the meaning of the statute."

---

standards/prevailing-wage-program/a-guide-to-the-ma-prevailing-wage-law-for-1.html [https://perma.cc/8S9Z-J7D3].

[9] "Prevailing Wage Opinion Letters" dating back to 1960 are posted on the department's official Web site.  See http://www.mass.gov/lwd/labor-standards/prevailing-wage-program/opinion-letters/ [https://perma.cc/AVL8-WQMQ].

That letter also discussed aspects of the job to which the prevailing wage law did not apply, such as contacting customers, attending training, and offsite work.

Subsequently, in an August 18, 2009, opinion letter, the department further stated that job descriptions involving "the programming and downloading of software and installation and commissioning of electronic direct digital controls (DDC) for HVAC systems in buildings" fell under the prevailing wage law. Specifically referencing the June 11, 2008, opinion letter, the 2009 letter stated that "[t]here is no question that the installation of HVAC systems, including commissioning and re-commissioning and testing and balancing of the HVAC system[,] is 'construction' within the meaning of the statute and covered by the provisions of G. L. c. 149, §§ 26, 27." The letter went on to state that "[w]ith the exception of computer programming work performed off-site, [the Department] discern[s] no significant difference" between the work described in the inquiry before it and the work that formed the basis for the June 11, 2008, letter, and that "[i]n both scenarios, technicians use computer software to complete the final phase in the installations or replacement of an HVAC system . . . . In both scenarios, the work performed by the technician is essential to the proper functioning of the HVAC system as a whole." It concluded by again stating that "the relevant question is whether the work

performed on the job site falls within the scope of work that is covered by a collective bargaining agreement. This office has determined that the work of commissioning and testing and balancing of HVAC systems, including the work performed . . . as described in your letter, is covered by a collective bargaining agreement."

The judge below noted that Niles "failed to support his contentions that his work constitutes prevailing wage work by pointing to facts in the record." Specifically, the judge noted that "[t]he work that [Niles] performs does not fit under 'construction' as defined by the prevailing wage law," because "[his] work as a controls technician does not fall under any of the relevant CBAs [collective bargaining agreements], and therefore cannot be prevailing wage work."[10]

The judge was correct in pointing out that the opinion letters relied upon by Niles, unlike regulations adopted under the State Administrative Procedure Act, G. L. c. 30A, § 15, do not have the same "force of law" as a statute. Global NAPs, Inc. v. Awiszus, 457 Mass. 489, 497 (2010). See Construction Indus. of Mass. v. Commissioner of Labor & Indus., 406 Mass.

---

[10] In its August 18, 2009, opinion letter, in reference to the work performed by an HVAC technician, the department stated, "This office has determined that the work of commissioning and testing and balancing of HVAC systems . . . is covered by a collective bargaining agreement. The proper classification is either Pipefitter or HVAC mechanic, which are the same rate of pay" (emphasis in original).

162, 170-171 (1989) (wage rates set by commissioner are specific to each job and are not regulations). However, the judge erred in disregarding the letters. Instead the judge emphasized that "Niles never brought a request to the Department of Labor to establish new job classifications, nor did the commissioner make a determination regarding Niles's work. Furthermore, it is undisputed that neither party requested an EOLWD [Executive Office of Labor and Workforce Development] letter in regard to Niles['s] job classification." The judge overlooked the fact that Niles, as an employee, is not authorized to request that the commissioner establish a new job classification. See G. L. c. 149, § 27.[11] Further, an employee such as Niles, unlike Huntington, is not authorized to appeal "a wage determination, or a classification of employment . . . made by the commissioner . . . ." G. L. c. 149, § 27A, as appearing in St. 1987, c. 544, § 2.

---

[11] General Laws c. 149, § 27, provides in relevant part as follows: "Prior to awarding a contract for the construction of public works, said public official or public body shall submit to the commissioner a list of the jobs upon which mechanics and apprentices, teamsters, chauffeurs and laborers are to be employed, and shall request the commissioner to determine the rate of wages to be paid on each job. Each year after the awarding of the contract, the public official or public body shall submit to the commissioner a list of the jobs upon which mechanics and apprentices and laborers are to be employed and shall request that the commissioner update the determination of the rate of wages to be paid on each job."

Courts customarily defer to an administrative agency's interpretation of its governing statute unless that interpretation is inconsistent with the statute or it purpose. See Mullally, 452 Mass. at 533 (Department of Labor's opinion letter that defendant violated prevailing wage law entitled to deference because it was not contrary to "plain language of the statutes or their underlying purposes"). See also Swift v. AutoZone, Inc., 441 Mass. 443, 450 (2004), quoting from Massachusetts Hosp. Assn. v. Department of Med. Sec., 412 Mass. 340, 345-346 (1992) ("In general, we grant substantial deference to an interpretation of a statute by the administrative agency charged with its administration"); Teamsters Joint Council No. 10 v. Director of the Dept. of Labor & Workforce Dev. 447 Mass. 100, 109-110 (2006) (deputy director's interpretation of prevailing wage law entitled to deference because Legislature delegated decision-making authority to department). In view of the Legislature's broad delegation to the commissioner of "the details of how the prevailing wage law should be applied," Teamsters Joint Council No. 10, supra at 109, we conclude that the judge erred in failing to give deference to the department's opinion letters.[12]

---

[12] The cited opinion letters were written prior to the litigation involved in this case. Thus, this is not a case in which the force and effect of opinion letters under the prevailing wage law may be affected by the connection between

3.  Scope of "construction" work under G. L. c. 149, § 27.
For purposes of the prevailing wage law, the term "construction"
includes "additions to or alterations of public works."  G. L.
c. 149, § 27D.[13]  The Supreme Judicial Court has observed that
although "[t]he word 'construction' in § 26 is ambiguous
standing alone," § 27D contains an expanded definition of the
term that indicates that "the Legislature has not taken a narrow
view of additions and alterations . . . ."  Felix A. Marino Co.
v. Commissioner of Labor & Indus., 426 Mass. 458, 461 (1998).
See Perlera v. Vining Disposal Serv., Inc., 47 Mass. App. Ct.
491, 493-494 (1999) (meaning of term used in a statute may
expand or contract depending on context).  The Supreme Judicial
Court also indicated that when it is "fairly debatable" whether
the work performed by an employee falls within the scope of the
prevailing wage law, the interpretive rulings made by the State

the request for such letters and litigation that is pending at
the time.  See Lighthouse Masonry, Inc., 466 Mass. at 697.

   [13] General Laws c. 149, § 27D, as appearing in St. 1961,
c. 475, § 2, reads as follows:  "Wherever used in sections
twenty-six to twenty-seven C, inclusive, the words
'construction' and 'constructed' as applied to public buildings
and public works shall include additions to and alterations of
public works, the installation of resilient flooring in, and the
painting of, public buildings and public works; certain work
done preliminary to the construction of public works, namely,
soil explorations, test borings and demolition of structures
incidental to site clearance and right of way clearance; and the
demolition of any building or other structure ordered by a
public authority for the preservation of public health or public
safety."

agency charged with administration of the law should be respected.  Felix A. Marino Co., supra.

The two opinion letters[14] cited by Niles and discussed above indicate that the testing of HVAC systems following their installation to ensure they operate as intended is "construction" work as that term appears in the statute.  For example, the opinion letter dated June 11, 2008, identifies job descriptions that are "clearly not prevailing wage work," such as providing "sales leads to personnel," "maintaining files," as well as "maintaining inventory, customer contacts, [and] communications with . . . management staff."  This letter further states that "work that is performed off-site, such as training sessions at factory locations and off-site computer work," is not work that is covered by the prevailing wage law.  However, the department concluded that "the position description also includes work that would require payment of prevailing wage."  This letter also quotes an earlier opinion letter, dated August 24, 2005, which, in turn, states that "end-to-end testing, downloading programming, starting up, and commissioning on assigned projects" by a technician may qualify as work

---

[14] The record also contains a third opinion letter dated December 8, 2009, which stated that "post-commissioning writing of computer code to integrate HVAC systems with servers and computers" was not work covered by the prevailing wage law, but reiterated that "testing, adjusting and balancing (TAB) [and] commissioning . . . to ensure the proper operation of the HVAC systems is covered by the prevailing wage law."

subject to the prevailing wage law.  Of particular significance is this observation:  "[I]nstallation or replacement of a system involves much more than simply installing a 'system' and cleaning up.  Such construction work is incomplete unless the owner has the assurance that the system purchased actually works as designed."  The May 18, 2009, opinion letter reiterates the points made in the June 11, 2008, opinion letter and concludes that "programming and downloading of software and installation and commissioning of electronic direct digital controls (DDC) for HVAC systems in buildings," when performed onsite, is "construction" within the meaning of the prevailing wage law.

In reviewing the record, the judge correctly noted that there was no dispute that some of the work performed by Niles "involved downloading a program into every HVAC controller and verifying that those programs are working properly."  However, because the work performed by Niles took place after a licensed electrician had installed the wiring, the judge erroneously concluded that it was "postinstallation" work and for that reason was not work that qualified as "construction" work within the meaning of the prevailing wage law.  Here, the judge disregarded the guidance supplied by the two opinion letters, and erred by categorically excluding, from the definition of "construction," work that took place after the physical components of the system had been installed and wired.  Whether

such work is regarded as installation or postinstallation work is beside the point.  The department is clear in its opinion letters that work performed onsite after the initial installation is completed may constitute "construction" work for the purposes of the prevailing wage law.  These opinions reflect the fact that many of the components and systems used in the construction of public works projects, such as HVAC systems, depend on microprocessors to function properly, and that these microprocessors are tested by means of handheld computers and software applications as opposed to more traditional tools.  The fact that another subcontractor known as an HVAC mechanical subcontractor also tests the system after Niles completes his work does not affect whether Niles was engaged in construction activity on behalf of Huntington.  The judge, therefore, erred as a matter of law in ruling that the work performed by Niles in downloading software into every HVAC controller and verifying that those programs worked properly was not covered by the prevailing wage law.

4.  Establishing a job classification and pay rate for an HVAC technician.  It is undisputed that the work performed by Niles did not all come within the job classifications for licensed electricians or pipefitters that appear in the relevant collective bargaining agreements.  Niles is not a licensed electrician.  Furthermore, as the judge noted, there is no

dispute that the work performed by Niles did not involve the installation of the physical components of the HVAC system, which was handled by licensed electricians, or the handling and installation of tubing and sheet metal as performed by pipefitters.  However, the department's two opinion letters that are before us address this question as well.  The department states, in its August 18, 2009, letter, that "the relevant question is whether the work performed on the job site falls within the scope of work that is covered by a collective bargaining agreement."  In its June 11, 2008, letter the department states that "the collective bargaining agreements with the pipefitters union cover the commissioning of HVAC systems as described.  Union pipefitters perform HVAC commissioning on job sites in Massachusetts, and are trained in commissioning processes through their apprentice training program.  Therefore, the proper job classification for commissioning work is pipefitter or HVAC Mechanic, which are the same pay rate."  In both opinion letters, the commissioner determined that the scope of work described in the letters -- work similar to the work performed by the plaintiff -- was covered by a collective bargaining agreement.  This is consistent with the corresponding job description for union pipefitters in the record before us.[15]

---

[15] The pipefitters' collective bargaining agreement,

Conclusion.  For the reasons stated above, the judge erred in allowing Huntington's motion for summary judgment on count one and in denying Niles's motion for partial summary judgment as to liability on count one.  We hold that the work performed by an HVAC technician such as Niles who, while onsite, downloads and installs software into HVAC components and then tests those components to ensure that they operate properly is employment "in the construction of public works" and thus is subject to the prevailing wage law.  Consequently, the judge should have allowed Niles's motion for partial summary judgment as to count one.  Because there are material facts in dispute as to the number of hours Niles performed "construction" work, as opposed to other kinds of work for Huntington, the case must be remanded to the Superior Court.

Insofar as the judgment dismisses count one, it is vacated, and the case is remanded for entry of an order allowing the plaintiff's motion for partial summary judgment as to liability on count one and for further proceedings on count one consistent

---

included in the parties' joint appendix to their statement of material facts, states that the "Union is the sole collective bargaining agency for Journeymen, and Apprentices, performing the work of erecting, installing, joining together, dismantling, adjusting, altering, repairing, maintaining and servicing any and all types of heating . . . and air conditioning systems." That agreement goes on to state that the "Work of the Pipefitters" includes "[o]perational tests of each system and of components of that system. Verification of performance, operating instructions, final operation."

with this opinion.  In all remaining respects the judgment is affirmed.

<u>So ordered</u>.