JOSEPH SWIFT & another[1] vs. AUTOZONE, INC.

Suffolk. February 5, 2004. - April 13, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Labor,* Wages, Overtime compensation.

Discussion of the legislative history of the Fair Labor Standards Act of 1938, 29 U.S.C. § 207 (2000), and that of its State counterpart, G. L. c. 151, § 1A. [445-449]

This court concluded that under G. L. c. 136, § 6 (50), and G. L. c. 151, § 1A, Massachusetts employers could offset or credit Sunday premium payments they provided to employees in any week toward overtime pay they provided to those employees under G. L. c. 151, § 1A, for working in excess of forty hours in that week. [449-450]

CIVIL ACTION commenced in the Superior Court Department on February 5, 2002.

The case was heard by *Allan van Gestel,* J. on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Judith A. Malone* (*Robert G. Young* with her) for the defendant.

*Charles E. Tompkins,* of the District of Columbia (*Richard M. Gelb, Tamara R. Pizer & Herbert E. Milstein* with him) for the plaintiffs.

*Robert P. Joy & Robert P. Morris,* for Associated Industries of Massachusetts & others, amici curiae, submitted a brief.

MARSHALL, C.J. A judge in the Superior Court reported the following question to the Appeals Court, pursuant to Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996): "Under G. L.

[1]Edward Cove.

c. 136, [§] 6 (50),[2] and G. L. c. 151, [§] 1A,[3] may a Mas-
sachusetts employer offset or credit a Sunday premium payment
it provides to an employee in any week toward overtime pay it
provides to that employee under G. L. c. 151, [§] 1A, for work-
ing in excess of forty hours in that week?" The question arose
when two employees, Joseph Swift and Edward Cove, filed a
complaint against their employer, AutoZone, Inc. (AutoZone),
an auto parts retailer, challenging its system of "crediting"
premium rate payments due for Sunday work to wages due for
overtime work.

In April, 2001, AutoZone informed its Massachusetts employ-
ees[4] that it was changing its policy regarding the compensation
of employees who work both on Sunday and for more than
forty hours in any week. Because of what AutoZone termed a
"calculations error," Massachusetts employees had been paid
"time-and-a-half pay" for work on Sunday (or paid holiday), in
addition to any overtime hours. This overpayment, AutoZone
said, was not "in line" with other Massachusetts employers,
and the "calculations error" would be "corrected."[5]

On February 5, 2002, the plaintiffs, who are hourly, nonex-

[2]General Laws c. 136, § 6 (50), the premium rate payment provision of the
so-called "Sunday" law, states in relevant part: "Any store or shop which
qualifies for exemption under this clause . . . and which employs more than a
total of seven persons . . . shall compensate all employees engaged in the
work performed on Sunday . . . at a rate not less than one and one-half times
the employee's regular rate." Pursuant to G. L. c. 136, § 13, employers must
also compensate hourly, nonexempt employees for the holidays listed in that
section, at the same rate as Sunday work.

[3]General Laws c. 151, § 1A, the overtime provision of the minimum wage
law, states in relevant part: "[N]o employer in the commonwealth shall employ
any of his employees in an occupation . . . for a work week longer than forty
hours, unless such employee receives compensation for his employment in
excess of forty hours at a rate not less than one and one half times the regular
rate at which he is employed."

[4]AutoZone is based in Memphis, Tennessee, and sells automobile and light
truck parts, chemicals, and accessories nationwide. AutoZone presently oper-
ates fifty-five retail stores in Massachusetts, employing approximately 760
employees.

[5]A notice concerning the policy change sent to all AutoZone employees
gave the following examples of the "corrected" policy:

"1. An AutoZoner works 8 hours on Sunday and 32 hours Monday-
Saturday. The AutoZoner will receive 32 hours regular pay and 8 hours
at time-and-a-half.

empt employees who work in two of AutoZone's retail stores, filed a class action complaint in the Superior Court seeking a judgment declaring that AutoZone's new policy violated G. L. c. 151, § 1A, injunctive relief, treble damages, and attorney's fees. On cross motions for summary judgment, the judge allowed the plaintiffs' motion and denied the defendant's motion, determining that neither of the two statutes at issue permitted such crediting. The judge reported the aforementioned question to the Appeals Court. We granted the parties' applications for direct appellate review.

Four months after summary judgment entered for the plaintiffs, and before briefing had concluded in this appeal, the Legislature enacted emergency legislation to take immediate effect. Statute 2003, c. 140, § 37, an amendment to G. L. c. 151, § 1A, expressly permits crediting: "In any work week in which an employee of a retail business is employed on a Sunday or certain holidays at a rate of one and one-half times the regular rate of compensation at which he is employed . . . the hours so worked . . . shall be excluded from the calculation of overtime pay as required by this section."

We conclude that, even prior to the 2003 amendment, neither G. L. c. 151, § 1A, nor G. L. c. 136, § 6 (50), prohibited employers from crediting Sunday premium rate payments toward overtime payments. We vacate the grant of summary judgment in favor of the plaintiffs, and remand the matter to the Superior Court where judgment shall enter for the defendant.

*Discussion.* The plaintiffs argue that the plain language of G. L. c. 151, § 1A, before it was amended in 2003, did not permit crediting. They point out that G. L. c. 151, § 1A, unlike its Federal counterpart, the Fair Labor Standards Act of 1938

"2. An AutoZoner works 8 hours on Sunday and 40 hours Monday-Saturday. The AutoZoner will receive 40 hours regular pay and 8 hours at time-and-a-half.

"3. An AutoZoner works 8 hours on Sunday and 42 hours Monday-Saturday. The AutoZoner will receive 40 hours regular pay and 10 hours at time-and-a-half.

"4. An AutoZoner works 0 hours on Sunday and 42 hours Monday-Saturday. The AutoZoner will receive 40 hours regular pay and 2 hours at time-and-a-half."

(FLSA), 29 U.S.C. § 207 (2000),[6] did not previously contain express language permitting crediting, and that the recent amendment to G. L. c. 151, § 1A, expressly permitting crediting is evidence that the practice was previously unlawful.

Turning first to the statutes themselves, *James J. Welch & Co.* v. *Deputy Comm'r of Capital Planning & Operations*, 387 Mass. 662, 666 (1982), an employer who credits premium rate payments for Sunday hours against overtime wages in fact satisfies the express language of both statutes, as illustrated by the following example. An employee who works for forty-eight hours, eight hours each day, Sunday through Friday, is paid at the regular rate of pay for forty hours, and one and one-half times for eight hours worked on Sunday. The employer has compensated the employee for work "in excess of forty hours at a rate not less than one and one-half times the regular rate," G. L. c. 151, § 1A, because the employee has been paid one and one-half times for eight hours of work. The employer has also compensated the employee for "the work performed on Sunday . . . at a rate not less than one and one-half times the employee's regular rate," because the employee has been paid one and one-half times for eight hours worked on Sunday. If two statutes require an employer to do the same thing, there is

---

[6]Title 29 U.S.C. § 207 (2000) states in relevant part: "(a)(1) [N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. . . . (e). . . . As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include . . . (5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be; (6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days . . . . (h)(2) Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable toward overtime compensation payable pursuant to this section."

no rule of statutory construction that compels the employer to do so twice.

The respective legislative histories of the two statutes confirm that, even before the 2003 amendment, the Legislature did not intend to grant any employee *double* one and one-half times payments, both for overtime and for Sunday work. The overtime provision of the minimum wage law, G. L. c. 151, § 1A, inserted by St. 1960, c. 813, was expressly intended to provide comparable overtime compensation "for all workers not now covered by Federal law." 1960 Senate Doc. No. 1, at 22. Because the overtime provisions under State law were intended to be "essentially identical" to Federal law, *Valerio* v. *Putnam Assocs. Inc.*, 173 F.3d 35, 40 (1st Cir. 1999), the history concerning "crediting" under the cognate Federal statute, 29 U.S.C. § 207(a), is relevant to understanding the intent of the Massachusetts Legislature in 1960. We briefly describe that legislative history.

Following the FLSA's enactment in 1938, employers generally credited contractually based overtime pay (including premium rate pay for work on weekends and holidays) against their statutory overtime obligation under the FLSA. See S. Rep. No. 402, 81st Cong., 1st Sess. (1949), reprinted in 1949 U.S.C. C.A.N. 1617, 1619-1620. Then, in 1943, the administrator of the wage and hour division (administrator) advised the war shipping administration that the FLSA did *not* permit employers to credit contractually-based overtime premiums against statutory overtime. *Id.* at 1620-1621. However, other government agencies disagreed with the administrator's interpretation. As a result, the administrator refrained from taking any action on his decision, and crediting continued. *Id.* at 1621. Thereafter, however, employees in the shipping industry began filing suits challenging the practice of crediting, and in 1948, the Supreme Court declared the practice invalid. *Bay Ridge Operating Co.* v. *Aaron*, 334 U.S. 446 (1948). Congress responded quickly, and within months of the Supreme Court's decision, amended the FLSA expressly to permit crediting. 29 U.S.C. § 207(e)(6), (h). See S. Rep. No. 402, 81st Cong., 1st Sess. (1949), reprinted in

1949 U.S.C.C.A.N. 1617.[7] The amendment defined " 'regular rate' of pay," and stated that "extra compensation provided by . . . premium rates" was creditable toward statutory overtime obligations. *Id.* at 1617-1618, 1627-1628.[8] See note 6, *supra.*

Two years *before* the 1949 amendment to the FLSA, the Massachusetts Legislature enacted the minimum wage law, G. L. c. 151, inserted by St. 1947, c. 432, § 1, in order "to correct inequities and to create a floor below which no employer may go in payment of wages to his employees." 1959 House Doc. No. 2666, at 6. The statute contained no provision for overtime compensation, so the issue of "crediting" did not arise. Only in 1958, did the Legislature begin to consider mandatory overtime compensation. See 1958 House Doc. No. 3018 (resolve providing for investigation and study relative to overtime pay). Notwithstanding a recommendation by the Department of Labor and Industries to the contrary,[9] in his 1960 annual address, the Governor urged the Legislature to enact a "State Fair Labor Standards Law" to provide overtime

---

[7]A report submitted to the United States Senate by the committee on labor and public welfare stated that the amendment to the FLSA was intended to "correct a situation" that "has become particularly acute" in the wake of *Bay Ridge Operating Co.* v. *Aaron*, 334 U.S. 446 (1948). See S. Rep. No. 402, 81st Cong., 1st Sess. (1949), reprinted in 1949 U.S.C.C.A.N. 1617, 1617. On the committee's recommendation, the amendment was made retroactive. The committee clearly believed that Congress always had intended to permit crediting under the original version of the FLSA, and that crediting had become unlawful only because of what Congress viewed as erroneous administrative and judicial interpretations. See *id.* at 1623-1626.

[8]As explained in the United States Department of Labor's regulations interpreting the FLSA "extra compensation provided by a Premium rate of at least time and one-half which is paid for work on Saturdays, Sundays, holidays, or regular days of rest or on the sixth or seventh day of the workweek (hereinafter referred to as 'special days') may be treated as an overtime premium for the purposes of [FLSA]." 29 C.F.R. § 778.203 (2004).

[9]In a Special Report of the Department of Labor and Industries Relative to Clarifying the Hours of Labor for Women and Children and Relative to Overtime Compensation for Work in Excess of Forty Hours a Week and Certain Related Matters, submitted in December, 1958, to the House of Representatives, the department noted that more than one-half of Massachusetts employees were being paid overtime pursuant to union contract, the department's wage orders, or the FLSA. 1959 House Doc. No. 2666, at 7. The department concluded that its own wage orders eventually would provide overtime compensation to most Massachusetts employees not otherwise

compensation for those Massachusetts workers *not* covered by Federal law. 1960 Senate Doc. No. 1, at 22. The Legislature responded affirmatively, and St. 1960, c. 813, providing for overtime compensation, was enacted later that year. G. L. c. 151, § 1A.

The Massachusetts overtime legislation was substantially similar to its Federal counterpart, 29 U.S.C. § 207(a), but unlike the FLSA, which (as described above) had been amended in 1949, did not expressly address "crediting." See St. 1960, c. 813. The plaintiffs argue that this omission in the 1960 Massachusetts legislation is evidence of a legislative intent to *prohibit* crediting. It is more likely, however, that, in 1960, the Legislature deemed unnecessary an express provision to permit crediting. The Legislature was likely aware that Congress intended the original FLSA to permit crediting, and that the Federal statute had been amended only after the Supreme Court of the United States ruled otherwise, *Bay Ridge Operating Co.* v. *Aaron, supra.* There is nothing in the legislative history to suggest that the Massachusetts Legislature intended to provide more generous overtime or premium rate compensation than Federal law, see 1960 Senate Doc. No. 1, at 22 (extending statutory overtime compensation to employees not covered by FLSA), and in light of Congress's response to the ruling of the Supreme Court, the Massachusetts Legislature would have no reason to believe that any Massachusetts court would rule against crediting.

Lest there be any doubt as to legislative intent in 1960, the 2003 amendment to *permit* crediting was swift legislative action in the wake of the Superior Court judge's ruling to the contrary in this case.[10] That action is strongly suggestive of the Legislature's intent in 1960. See *Fitz-Inn Auto Parks, Inc.* v. *Commissioner of Labor & Indus.,* 350 Mass. 39, 42 (1965) (logical to interpret recent statutory amendment as "clarification of an ambiguity and a legislative interpretation of the original

covered, and recommended against legislation to provide for such compensation. *Id.* at 7-8.

[10]The amendment did not adopt the generic language of the 1949 Federal crediting amendment, but crafted language explicitly addressing the premium rate payment provision of the "Sunday" laws, G. L. c. 136, § 6 (50), the statute at issue in this case.

act"). See also note 7, *supra.* It is also consistent with the actions of other State Legislatures confronted with court decisions prohibiting crediting.[11]

We address one final point raised by the plaintiffs. In October, 2001, the division of occupational safety of the Department of Labor and Workforce Development, the agency charged with the administration of G. L. c. 151, § 1A, issued an opinion letter to the effect that crediting violated G. L. c. 151, § 1A. "In general, we grant substantial deference to an interpretation of a statute by the administrative agency charged with its administration." *Massachusetts Hosp. Ass'n* v. *Department of Med. Sec.,* 412 Mass. 340, 345-346 (1992). But where the agency's interpretation is "contrary to plain language of the statute and its underlying purpose," no deference is warranted. *Id.* at 346.

The case is remanded to the Superior Court where judgment shall enter for the defendant.

*So ordered.*

---

[11]Many States do not have overtime laws comparable to Massachusetts, and few States require premium rate compensation for hours worked on Sundays and holidays. See Finkel, State Wage-and-Hour Law Class Actions: The Real Wave of FLSA Litigation?, 7 Employee Rts. & Employment Pol'y J. 159, 163-165 (2003). However, in two States where courts have ruled that crediting was prohibited, see *Narragansett Food Servs.* v. *Rhode Island Dep't of Labor,* 420 A.2d 805 (R.I. 1980), and *Pullano* v. *Bluefield,* 176 W. Va. 198 (1986), the respective State Legislatures eventually responded by amending the State overtime statutes to permit crediting. 1987 R.I. Pub. Laws c. 553, § 1; 1992 W. Va. Acts c. 118 (House Bill No. 4190).