MICHAEL MULLALLY & another[1] *vs.* WASTE MANAGEMENT OF
MASSACHUSETTS, INC.

Norfolk. September 4, 2008. - November 6, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Labor,* Public works, Overtime compensation, Wages. *Public Works,* Wage
determination. *Municipal Corporations,* Contracts, Refuse collection and
disposal. *Statute,* Construction. *Administrative Law,* Agency's interpreta-
tion of statute. *Words,* "Regular rate."

Discussion of G. L. c. 151, § 1A, the statute governing overtime compensa-
tion, and G. L. c. 149, § 27F, which mandates a particular minimum wage
for certain public works contracts. [528-529]
In the circumstances of a civil action brought by representatives of a class of
waste disposal truck drivers and laborers currently or formerly employed
by the defendant, alleging improper calculation of overtime compensation,
the defendant's payroll formula, in which the employer calculated
employees' overtime wages using a base pay rate less than the applicable
prevailing wage, and then averaging the employees' nonovertime and
overtime pay in order to meet or exceed the prevailing wage rate after
making certain deductions, violated G. L. c. 151, § 1A, where the formula
frustrated the statute's purposes of reducing the number of hours of work,
encouraging the employment of more persons, and compensating employees
for the burden of a long work week. [530-533]
In the circumstances of a civil action brought by representatives of a class of
waste disposal truck drivers and laborers currently or formerly employed
by the defendant, alleging improper calculation of overtime compensation,
this court concluded that the term "regular rate" in G. L. c. 151, § 1A,
referred to the prevailing wage set by the director of the Department of
Labor for waste disposal employees performing under municipal contracts.
[534-536]

CIVIL ACTION commenced in the Superior Court Department on
May 25, 2006.

Motions for summary judgment were heard by *Charles M.
Grabau,* J., and questions of law were reported by him to the
Appeals Court.

The Supreme Judicial Court granted an application for direct
appellate review.

[1]Steven Neitlich.

*Paul E. Nemser* for the defendant.

*F. Henry Ellis, III,* for the plaintiffs.

*Donald Siegel & Nicole Horberg Decter,* for Massachusetts Building Trades Council, amicus curiae, submitted a brief.

*Karla E. Zarbo,* Assistant Attorney General, for the Commonwealth & another, amici curiae, submitted a brief.

SPINA, J. The plaintiffs, who represent a class of waste disposal truck drivers and laborers currently or formerly employed by the defendant, Waste Management of Massachusetts, Inc. (Waste Management), commenced a suit against Waste Management alleging, inter alia, that its payroll formula violated G. L. c. 149, § 27F, which mandates a particular minimum wage for certain public works contracts, and G. L. c. 151, § 1A, which governs overtime compensation. On cross motions for summary judgment, the judge ruled that Waste Management's payroll formula complied with G. L. c. 149, § 27F, but violated G. L. c. 151, § 1A.[2]

The judge, on Waste Management's unopposed motion, reported the following two questions of law to the Appeals Court pursuant to Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996):

> "1) Whether the defendant complied with prevailing wage law [G. L. c. 149, § 27F,] by paying wages which, when averaging overtime and straight earnings, meet the prevailing wage rate;

> "2) Whether the defendant violated prevailing overtime [wage] law [G. L. c. 151, § 1A,] by calculating overtime wages using a regular hourly rate less than the prevailing wage eligible employees must be paid."

We granted Waste Management's application for direct appellate review. Because the judge concluded that there was no

---

[2]Two of the plaintiffs' other claims are derivative of their claim under G. L. c. 151, § 1A. After concluding that Waste Management violated G. L. c. 151, § 1A, the judge allowed the plaintiffs' motion for summary judgment on those claims. The judge denied Waste Management's motion for summary judgment as to whether its violation of G. L. c. 151, § 1A, was wilful, see G. L. c. 151, § 1B (permitting award of treble damages, costs, and attorney's fees for wilful violations); G. L. c. 149, § 150 (same), reasoning that there was a genuine issue of material fact.

violation of the prevailing wage law and the plaintiffs did not challenge that ruling or brief it on appeal, we find it unnecessary to answer the first question.[3]

*Statutory framework.* General Laws c. 151, § 1A, provides, in relevant part:

> "Except as otherwise provided in this section, no employer in the commonwealth shall employ any of his employees . . . for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed."[4]

General Laws c. 149, § 27F, which is set out in the margin,[5] requires that the prevailing wage rate set by the director of the Department of Labor[6] be paid to waste disposal employees performing under municipal contracts. See *Perlera* v. *Vining Disposal Serv., Inc.,* 47 Mass. App. Ct. 491, 496 (1999) (§ 27F ap-

---

[3]We acknowledge the amicus briefs submitted in support of the plaintiffs by the Attorney General, on behalf of the Commonwealth and the Department of Labor's division of occupational safety, and the Massachusetts Building Trades Council.

[4]Waste Management does not contend that any of the statutory exemptions set forth in G. L. c. 151, § 1A (1)-(20), apply in this case.

[5]General Laws c. 149, § 27F, states, in pertinent part:

> "No agreement of lease, rental or other arrangement, and no order or requisition under which a truck or any automotive or other vehicle or equipment is to be engaged in public works by the commonwealth or by a county, city, town or district, shall be entered into or given by any public official or public body unless said agreement, order or requisition contains a stipulation requiring prescribed rates of wages, as determined by the commissioner, to be paid to the operators of said trucks, vehicles or equipment. Any such agreement, order or requisition which does not contain said stipulation shall be invalid, and no payment shall be made thereunder. Said rates of wages shall be requested of said commissioner by said public official or public body, and shall be furnished by the commissioner in a schedule containing the classifications of jobs, and the rate of wages to be paid for each job. Said rates of wages shall include payments to health and welfare plans, or, if no such plan is in effect between employers and employees, the amount of such payments shall be paid directly to said operators."

[6]Although G. L. c. 149, § 27F, refers to the "commissioner," the statute defines "commissioner" as "the director of the department of labor." G. L. c. 149, § 1.

plies to municipal waste disposal contracts). An employer may prorate on an hourly basis qualifying health and welfare benefits paid on behalf of an employee and deduct that amount from the prevailing wage rate. G. L. c. 149, § 27F.

*Facts.* We summarize the undisputed material facts. Waste Management provides solid waste disposal services to various municipalities. Waste Management must pay employees the prevailing wage rate for work performed under contracts with those municipalities.

Waste Management utilizes a complicated payroll formula that assigns employees engaged in prevailing wage work a "base pay rate" below the applicable prevailing wage rate. It determines the base pay rate based on an assumption as to how many hours, including overtime hours, an employee typically works each week,[7] and uses the base pay rate to calculate overtime pay, paying the employee the base pay rate for the first forty, "straight time" hours worked and one and one-half times the base pay rate for each overtime hour. Waste Management then averages the employee's nonovertime and overtime pay in order to meet or exceed the prevailing wage rate after the deduction of qualifying health and welfare benefits. By using this base pay rate, Waste Management uses overtime compensation to "influence" an employee's gross wages.[8] When an employee's average hourly rate in a given week falls below the prevailing wage rate because the

---

[7] In the plaintiffs' case, Waste Management determined the base pay rate by projecting that the plaintiffs would work approximately 55.6 hours per week. Based on this assumption, Waste Management set the plaintiffs' base pay rate at $18.98 per hour, which results in an average hourly rate of $21.64, the prevailing wage rate applicable to the plaintiffs after the deduction of qualifying health and welfare benefits [(40 x $18.98) + (15.6 x [$18.98 x 1.5])]/55.6 = $21.64].

[8] General Laws c. 149, § 27F, does not state specifically that the prevailing wage rate is the hourly rate employees are to be paid for the first forty hours of weekly wages. Waste Management contends that because the statute does not equate the two rates, § 27F may be construed as requiring payment of the prevailing wage rate for the total number of hours each week, including overtime hours. Under this approach, the prevailing wage rate is a fixed rate, and the "base pay rate," the hourly rate for the first forty hours, is actually a floating weekly rate, depending on the number of overtime hours actually worked. Waste Management's use of the "buffer check" is an artificial device designed to keep the base pay rate floating in the same place each week. The effect is to make the base pay rate appear fixed, or "regular," when in fact it is not.

employee has worked fewer hours than projected, Waste Management issues a "buffer check" payment to bring the employee's earnings into compliance with G. L. c. 149, § 27F.[9,10]

*Discussion.* Waste Management contends that so long as employees are paid an hourly wage not less than the prevailing wage after qualifying deductions for *all* hours worked, including overtime, the requirements of G. L. c. 151, § 1A, are satisfied. We disagree.

[9]A buffer check payment also includes payment of an overtime premium on the payment needed to bring the employee's wages into compliance with the prevailing wage statute.

[10]To illustrate Waste Management's formula, we offer the following hypothetical. The prevailing wage rate for waste removal services for a hypothetical municipality is set at $25 per hour. Waste Management may deduct $3 per hour from the prevailing wage rate for qualifying health and welfare benefits, and therefore must pay the employee $22 per hour. Waste Management anticipates that its employee will work exclusively on the contract with the municipality for fifty hours every week. Based on these assumptions, Waste Management will set its base pay rate at $20 per hour to ensure that the employee receives an average wage of at least $22 per hour for *all* hours worked, paying the employee $20 per hour for the first forty "straight time" hours and $30 per hour for each overtime hour. Waste Management will determine the base pay rate, B, as follows:

[(40 hours x B) + 10 hours (1.5 B)]/50 = $22 per hour
[55 B]/50 = $22 per hour
B = $20 per hour

If the employee works only forty hours one week, then the employee will be paid $20 per hour for straight time, or $800, and receive a buffer check for $80 contemporaneous with the $800 check, resulting in an average hourly wage of $22. If the employee works forty-five hours in a particular week, the employee will receive $800 for straight time and $150 in overtime pay, resulting in an average hourly wage of $21.11. Waste Management will issue a buffer check for $ 42.38, consisting of $40.15 (to bring the employee's average hourly wage up to $22) and $2.23 (overtime earnings on the additional buffer check wages). The overtime earnings will be calculated as follows: $.89 (difference between an hourly wage of $22 and $21.11) x .5 (half time) x 5 overtime hours = $2.23. The employee's average hourly rate for that week will be $22.05 [($42.38 + $150 + 800)/45 = $2.05].

To illustrate how an employee's base rate actually floats, we use this same hypothetical, in which $992.38 is paid for a forty-five hour week. The base pay, when calculated solely through the use of rates and hours, and omitting buffer check calculations, is approximately $20.89 per hour [$20.89 x 40 hours = $835.60, plus overtime at 1.5 x $20.89 x 5 hours = $156.70, for a total pay of $992.30]. There is in fact nothing "regular" about the rate of pay that Waste Management's employees earn for the first forty hours of any given week that contains overtime work.

We interpret G. L. c. 151, § 1A, "according to the intent of the Legislature, as evidenced by the language used, and considering the purposes and remedies intended to be advanced." *Glasser v. Director of the Div. of Employment Sec.*, 393 Mass. 574, 577 (1984). "We do not overlay the words of a statute with a convention of statutory construction that 'would frustrate the general beneficial purposes of the legislation.' " *Suffolk Constr. Co. v. Division of Capital Asset Mgt.*, 449 Mass. 444, 454-455 (2007), quoting *Harborview Residents' Comm., Inc. v. Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975).

Waste Management's use of a base pay rate below the prevailing wage rate frustrates the purposes of G. L. c. 151, § 1A. General Laws c. 151, § 1A, was "intended to be 'essentially identical' " to the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 207(a)(1) (2000). *Swift v. AutoZone, Inc.*, 441 Mass. 443, 447 (2004), quoting *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 40 (1st Cir. 1999). Compare 29 U.S.C. § 207(a)(1) (2000) with G. L. c. 151, § 1A. Accordingly, we ascribe the legislative purposes underlying the FLSA to G. L. c. 151, § 1A, see *Poirier v. Superior Court*, 337 Mass. 522, 527 (1958) ("The adjudged construction by the Federal courts is to be given to the subsequent enactment by the Legislature"), and conclude that G. L. c. 151, § 1A, aims to reduce the number of hours of work, encourage the employment of more persons, and compensate employees for the burden of a long workweek. See *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 423-424 (1945).[11]

In light of the purposes underlying G. L. c. 151, § 1A, Waste

---

[11]Waste Management urges us to infer the Legislature's sanction of its payroll formula from the fact that the Legislature has not amended either the prevailing wage statute or the overtime statute even though at least one of the Federal statutes similar to G. L. c. 149, § 27F, expressly requires overtime compensation to be calculated using the prevailing wage rate. See 40 U.S.C. § 3142(e) (2000). Even if we assume, arguendo, that 40 U.S.C. § 3142 is somewhat analogous to G. L. c. 149, § 27F, the legislative histories of G. L. c. 149, § 27F, and 40 U.S.C. § 3142 do not support the inference Waste Management asks us to make. The enactment of G. L. c. 149, § 27F, in 1960, see St. 1960, c. 795, preceded the enactment of 40 U.S.C. § 3142, which was enacted in 1964. See Pub. L. 88-349, § 1, 78 Stat. 239 (1964). Therefore, the Massachusetts prevailing wage law was not modeled on 40 U.S.C. § 3142(e). For this reason, we decline to infer the Legislature's rejection of the prevailing wage rate to calculate overtime compensation from its failure to amend the

Management's payroll formula is untenable. Waste Management evades the economic disincentive to have an employee work more than forty hours a week in that it ultimately pays the employee an hourly wage equal to or nearly equal to the prevailing wage rate regardless of whether the employee works overtime. Using the hypothetical in note 10, *supra*, an employee would receive $22 per hour regardless of whether the employee worked forty or fifty hours. Even if an employee received slightly more than $22 per hour for having worked some overtime,[12] that marginal increase hardly provides Waste Management with the economic disincentive intended by G. L. c. 151, § 1A. Moreover, unlike employers who may hire more employees in order to avoid paying existing employees overtime, Waste Management obviates the need to hire additional employees by using the "influence" of overtime compensation on an employee's gross earnings to produce an average hourly wage equal or nearly equal to the prevailing wage rate, which Waste Management would otherwise pay to additional employees. Waste Management's payroll formula also does not compensate employees for longer work weeks, as illustrated by the fact that an employee performing prevailing wage work receives approximately the same hourly wage regardless whether the employee works overtime.

The frustration of the purpose of G. L. c. 149, § 27F, provides yet another reason for rejecting Waste Management's payroll formula. See *Larson* v. *School Comm. of Plymouth*, 430 Mass. 719, 724 (2000) (related statutes should be construed harmoniously and to implement intent of Legislature). The prevailing wage law endeavors to achieve parity between the wages of workers engaged in public construction projects and workers in the rest of the construction industry. See *McCarty's Case*, 445 Mass. 361, 377 (2005) (Sosman, J., concurring); *Felix A. Marino*

---

prevailing wage or overtime statutes to correspond to Federal law. Contrast *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 432-433 (1983) ("If the language of a statute differs in material respects from a previously enacted analogous Federal statute which the Legislature appears to have considered, a decision to reject the legal standards embodied or implicit in the language of the Federal statute may be inferred").

[12] For example, if the employee worked forty-five hours, the employee would receive an average hourly wage of $22.05. See note 10, *supra*. In a fifty-five hour work week, the employee's average hourly wage would be $ 22.72 [40 x $20 + 15 x $30/55 = $22.72].

*Co.* v. *Commissioner of Labor & Indus.*, 426 Mass. 458, 460 (1998). Waste Management's formula subverts the purpose of G. L. c. 149, § 27F, by enabling Waste Management to offer its services for less than what is customarily charged by its competitors for nonpublic works contracts. In the hypothetical in note 10, *supra*, Waste Management may offer its services for substantially less ($20 per hour for straight time and $30 for each overtime hour) than other similarly situated service providers (who pay employees $22 per hour for straight time and $33 for overtime) by using a base pay rate lower than the prevailing wage rate to calculate overtime compensation. In so doing, Waste Management undermines the wage protections embodied in the prevailing wage laws. See *McCarty's Case*, *supra* at 377 (Sosman, J., concurring); *Felix A. Marino Co.* v. *Commissioner of Labor & Indus.*, *supra* at 460.

Our conclusion that Waste Management's payroll scheme violates G. L. c. 151, § 1A, is consistent with an opinion letter issued by the division of occupational safety, the division of the Department of Labor charged with implementing G. L. c. 149, § 27F, and G. L. c. 151, § 1A, during this litigation.[13] The division concluded that Waste Management's payroll formula violated G. L. c. 151, § 1A, because G. L. c. 149, § 27F, required Waste Management to pay its employees an hourly wage equal to the prevailing wage rate minus qualifying deductions and that overtime compensation should have been calculated based on that figure. Because the agency's interpretation is not contrary to the plain language of the statutes or their underlying purposes, it is entitled to deference. See *Teamsters Joint Council No. 10* v. *Director of the Dep't of Labor & Workforce Dev.*, 447 Mass. 100, 109-110 (2006). Contrast *Swift* v. *AutoZone, Inc.*, *supra* at 450 (opinion letter not entitled to deference because it was contrary to law).[14]

---

[13]Although an agency's determination is ordinarily entitled to great deference, see *Teamsters Joint Council No. 10* v. *Director of the Dep't of Labor & Workforce Dev.*, 447 Mass. 100, 106 (2006), "[a]n administrative interpretation developed during, or shortly before, the litigation in question is entitled to less weight than that of a long-standing administrative interpretation of administrative rules." 1A N.J. Singer, Sutherland Statutory Construction § 31.6, at 730 (6th ed. rev. 2002).

[14]Waste Management, relying on the trial judge's conclusion that its payroll

One final issue warrants discussion. The parties have expended considerable energy debating the meaning of the term "regular rate" in G. L. c. 151, § 1A.[15] Title 455 Code Mass. Regs. § 2.02(3) (2003) provides that the overtime rate, subject to certain exemptions not relevant here, shall be "[o]ne and one half times an employee's regular hourly rate, such regular hourly rate not to be less than the basic minimum wage . . . ."[16] "Regular hourly rate" refers to "[t]he amount that an employee is regularly paid for each hour of work." 455 Code Mass. Regs. § 2.01 (2003). The regulation further explains:

> "When an employee, other than an employee exempt from overtime under [G. L.] c. 151, § 1A, is paid on a piece work basis, salary, or *any basis other than an hourly rate*, the regularly [*sic*] hourly rate shall be determined by

formula did not violate the prevailing wage law, argues that the opinion letter erroneously assumes that an employer may not use a base pay rate below the prevailing wage rate and is therefore not entitled to deference. We disagree. Waste Management overstates the significance of the ruling below. The judge ruled that, "[f]or purposes of complying with the prevailing wage law *only*, it makes no practical difference that the defendant's payroll method uses a formula with a base rate and buffer checks, as long as the average hourly rate of wages equals the prevailing wage rate" (emphasis in original). The judge's decision, fairly read, suggests that while an employer's liability under the prevailing wage law can be determined independent of its liability under the overtime law, an employer's liability under the overtime law must be read in conjunction with the prevailing wage law where applicable. Although we do not address Waste Management's liability under G. L. c. 149, § 27F, we note that while the plain language of the prevailing wage statute does not expressly forbid the use of buffer checks, the division's position does not contravene either the plain language of the statute or its underlying purpose.

[15]We last considered the meaning of this term in *Goodrow* v. *Lane Bryant, Inc.*, 432 Mass. 165, 174-177 (2000), which dealt with the calculation of overtime for a salaried employee. The regulations have been revised since then. The current regulations (which were in effect at the commencement of this litigation) equate the term "regular rate" as used in the statute with the term "regular hourly rate." 455 Code Mass. Regs. § 2.02(3) (2003). See *Goodrow* v. *Lane Bryant, Inc., supra* at 174 n.8 ("The term 'regular rate' as used in G. L. c. 151, § 1A, and the terms 'regular hourly wage rate' and 'regular hourly rate' as used in 455 Code Mass. Regs. § 2.02, tenth par. (1993), are functionally synonymous").

[16]The regulations define the "basic minimum wage" as "[t]he minimum wage in effect under [G. L.] c. 151, § 1 . . . ." 455 Code Mass. Regs. § 2.02(1) (2003). Because the parties agree that Waste Management was required to pay prevailing wage rate, G. L. c. 151, § 1, which set the minimum wage at $6.75 per hour, does not apply to this case.

dividing the total hours worked during the week into the
employee's total weekly earnings. Regardless of the basis
used, whether time rate, commission basis or piece rate, an
employee shall be paid not less than the *applicable minimum
wage* each week. The regular hourly rate shall include all
remuneration for employment paid to, or on behalf of, the
employee, but shall not include: . . . (b) sums excluded
under 29 U.S.C. § 207(e)." (Emphasis added.)

*Id.*

"[I]nterpret[ing] [the] regulation in the same manner as a stat-
ute, and according to traditional rules of construction," *Warce-
wicz* v. *Department of Envtl. Protection*, 410 Mass. 548, 550
(1991), the clear implication of 455 Code Mass. Regs. § 2.01 is
that the rate paid to hourly employees forms the basis for calculat-
ing overtime and that that rate shall not be less than the "applic-
able minimum wage." See *id.* The applicable minimum wage for
public works contracts is the prevailing wage. This interpretation
finds support in other sections of G. L. c. 149 that describe the
prevailing wage rate as a minimum wage rate. See G. L. c. 149,
§ 26 (minimum wage rate). See also G. L. c. 149, § 27 (minimum
rate or rates of wages). If, as Waste Management contends, the
term "applicable minimum wage" was intended to refer to the
*basic* minimum wage, see G. L. c. 151, § 1; 455 Code Mass.
Regs. § 2.02(1), then the regulations would have explicitly stated
so. This is especially true where, as here, the regulations use the
term "basic minimum wage," 455 Code Mass Regs. § 2.02(1),
to refer to the absolute floor on wages set by G. L. c. 151, § 1.
See *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 324 (1998)
("Where the Legislature used different language in different
paragraphs of the same statute, it intended different meanings").[17]
Even if the regulations do not expressly require an employer to
calculate overtime using the prevailing wage rate, we will not in-
terpret the regulations "in a way that produces a result which 'is

[17]One could argue persuasively that reference to the "basic minimum
wage" in 455 Code Mass. Regs. § 2.02(3) is in tension with the mention in
455 Code Mass. Regs. § 2.01 of the "applicable minimum wage" insofar as
both seem to serve as a floor on the hourly wage rate used for purposes of
calculating overtime compensation. See *Goodrow* v. *Lane Bryant, Inc.*, *supra*
at 175 (reference to "applicable minimum wage" acts as "check" for purposes
of determining overtime compensation for salaried employee).

contrary to the plain language of [G. L. c. 151, § 1A,] and its underlying purpose.' " *TBI, Inc.* v. *Board of Health of N. Andover*, 431 Mass. 9, 13 (2000), quoting *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 618 (1997).

*Conclusion.* For the foregoing reasons, we answer the second question, "Yes," and find it unnecessary to answer the first question. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*