NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13407


RUSSELL METCALF & another[1]  vs.  BSC GROUP, INC., & others;[2]
DEPARTMENT OF TRANSPORTATION, third-party defendant.



Suffolk.     May 3, 2023. - August 21, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.



Massachusetts Wage Act.  Public Works, Wage determination.
Contract, For services.  Labor, Public works, Wages.
Statute, Construction.  Practice, Civil, Summary judgment.




Civil action commenced in the Superior Court Department on
September 14, 2017.

The case was heard by Christine M. Roach, J., on motions
for summary judgment.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Kristie A. LaSalle (Lou Saban also present) for the
plaintiffs.
Jonathan C. Burwood for BSC Group, Inc., & others.
Kate Isley, Assistant Attorney General, for Department of
Transportation.

_____

[1] Steven Theurer.

[2] BSC Companies, Inc.; and David Hayes.

<u>Jon C. Cowen & Michael Robertson</u>, for American Council of Engineering Companies of Massachusetts, amicus curiae, submitted a brief.

WENDLANDT, J.  Like the idiomatic "square peg in a round hole,"[3] we conclude that the Prevailing Wage Act, G. L. c. 149, §§ 26-27H (Prevailing Wage Act or Act), which governs contracts for the construction of certain public works projects, does not "fit" the two professional engineering services contracts at issue in the present case.  These professional services contracts, which the third-party defendant, the Department of Transportation (MassDOT), awarded to the defendants, BSC Group, Inc., and BSC Companies, Inc. (collectively, together with the companies' president, the defendant David Hayes, BSC), were untethered to a particular public works construction project and were awarded based on BSC's qualifications to provide expert professional consulting services to MassDOT over the course of years, consistent with or pursuant to G. L. c. 7C, § 58 (§ 58).

---

[3] S. Smith, On the Conduct of the Understanding, Lecture IX, in Elementary Sketches of Moral Philosophy, Delivered at the Royal Institution, in the Years 1804, 1805 and 1806, at 109-110 (1850) ("If you choose to represent the various parts in life by holes upon a table, of different shapes, -- some circular, some triangular, some square, some oblong, -- and the persons acting these parts by bits of wood of similar shapes, we shall generally find that the triangular person has got into the square hole, the oblong into the triangular, and a square person has squeezed himself into the round hole").

Unlike contracts for public works construction projects governed by the Act, these contracts were not competitively bid and were not awarded to the lowest bidder; indeed, the compensation MassDOT would pay for BSC's professional services was not considered by MassDOT until after the agency had selected BSC in view of its expertise. Rather than specifying that BSC's employees would be paid at least a prevailing wage determined by the Department of Labor Standards (DLS), as is required for contracts covered by the Act, the BSC contracts -- the second of which expressly was issued pursuant to § 58 -- specified only the hourly rate and maximum total compensation that MassDOT would pay to BSC, based on MassDOT's own determination as to what was fair and reasonable in view of BSC's credentials and experience.

Concluding that the contracts are not governed by the Act and that BSC was not required to pay its employees a prevailing wage pursuant to the contracts, we affirm the Superior Court judge's grant of summary judgment in favor of BSC on the

Prevailing Wage Act claims of its former employees, the plaintiffs, Russell Metcalf and Steven Theurer.[4],[5]

1. Background. a. Facts. "The following facts are either undisputed 'or viewed in the light most favorable to . . . the party against [whom] summary judgment entered.'" HSBC Bank USA, N.A. v. Morris, 490 Mass. 322, 323 (2022), quoting Berry v. Commerce Ins. Co., 488 Mass. 633, 634 (2021).[6]

This case centers on two requests for responses (RFRs) issued by MassDOT. MassDOT released the first in June 2011, seeking proposals from prequalified professional services firms to provide engineering field surveying services "on general highway and bridge projects or as directed as needed," "under the direction of the MassDOT Survey Supervisor" on an on-call basis. The selected consultant also would share responsibility with MassDOT employees for "general supervision of Survey Crews assigned to construction operations." In connection with the

---

[4] For the same reasons, we affirm the Superior Court judge's grant of summary judgment in favor of the third-party defendant, MassDOT, on BSC's third-party claims for indemnification and unjust enrichment.

[5] We acknowledge the amicus brief submitted by the American Council of Engineering Companies of Massachusetts.

[6] The parties have supplied a fully developed record on summary judgment. Contrast Marsh v. Massachusetts Coastal R.R., 492 Mass. 641, 643 (2023) (motion to dismiss stage).

RFR process, MassDOT did not ask the DLS[7] to determine the prevailing wage rates for the anticipated work; no prevailing wage rate schedule was provided to firms responding to the RFR.

Responding firms were to submit their qualifications for the work and were to be selected exclusively on that basis.[8] The firms were not asked to submit, and did not submit, information regarding the financial aspects of their proposals, including any proposed compensation to the firm or any proposed wage rates for the firm's employees to perform the anticipated work. The contracts thus could not be -- and were not -- awarded on a low-bid basis.

---

[7] The programs and responsibilities of the Department of Labor Standards, prior to a reorganization of the Executive Office of Labor and Workforce Development in 2011, were housed in other divisions. See Lighthouse Masonry, Inc. v. Division of Administrative Law Appeals, 466 Mass. 692, 693 n.3 (2013). For convenience, we use "DLS" when referring to these other divisions prior to the 2011 reorganization.

[8] Responses were to include the "qualifications of [the] [pro]spective consultant's personnel," "experience on similar projects," and "general understanding of the scope of services," along with a list of references, a list of potential conflicts, an approved affirmative action certificate, evidence of prequalification, audit data, and a brief statement as to insurance and risk management. Responses would be evaluated and scored on the basis of personnel, equipment, experience in performing similar work, demonstrated understanding of the scope of services and completeness of responses to the RFR, performance on previous municipal or governmental contracts (including references), and capacity to work within the outlined areas.

Following presentation of BSC's qualifications, MassDOT selected BSC to provide the requested specialized consultant services to the agency; the financial terms of the deal, including proposed compensation rates to be paid to BSC, were negotiated thereafter, based on a consideration of BSC's qualifications and MassDOT's determination of reasonableness and fairness.[9]  The parties then executed the first contract, which governed their relationship from 2012 to 2014.[10]

In June 2014, before the end of the first contract, MassDOT released the second RFR, seeking proposals from prequalified firms to provide essentially the same type of engineering field surveying services as sought under the first RFR.  The process was, in all relevant respects, the same.  As with the first RFR, MassDOT did not ask DLS for a prevailing wage schedule, and none was provided to firms responding to the RFR.  Again, MassDOT selected BSC for the work based on its qualifications, negotiating BSC's compensation thereafter following the same process.  The parties then executed the second contract, which governed their relationship from 2015 to 2017.

---

[9] BSC provided MassDOT with its rates of pay for employees to be assigned to the contract, and MassDOT calculated the price it determined was reasonable and fair to pay BSC by adding "a blended rate of pay per type of employee to an audited overhead rate calculated for BSC by MassDOT."

[10] The original contract, which ran until 2013, was extended through 2014.

Neither contract specified that the services were to be rendered in connection with a particular public works construction project; instead, BSC agreed to provide its engineering field surveying services on "general highway and bridge projects or as directed as needed" in "District Three" over a period of years.[11]  The contracts did not set forth a prevailing wage schedule and did not include an agreement by BSC to pay its employees based on prevailing wage rates determined by DLS; instead, the contracts specified hourly rates, and the maximum total compensation, that MassDOT would pay to BSC for its engineering field surveying services.  No provision prescribed the wage amount that BSC was to pay to its employees.[12]

Pursuant to the contracts, BSC provided two- and three-person crews of professional engineering field surveyors directly to MassDOT to perform field surveying services on various public works projects as directed by MassDOT -- one such crew comprised the plaintiffs, Metcalf and Theurer.[13]  The

_____

[11] District Three comprises towns and cities in western Middlesex and Worcester counties.

[12] Rather than setting forth a minimum wage for BSC's employees, the contracts set limits on labor costs on a not-to-exceed basis.  These limits were also set forth in sample contract provisions attached to the RFRs.

[13] From January 2012 through June 2017, BSC employed Metcalf as a survey party crew chief.  From April 2013 through

plaintiffs performed engineering field surveying services on about thirty bridge- and roadway-construction projects in District Three.

While the plaintiffs "worked under MassDOT's supervision, they often performed surveys requested by the on-site general contractor," after receiving MassDOT's "approv[al]," and their work "directly aided in the construction process." According to one of their MassDOT supervisors, the plaintiffs' role at many project sites was "[t]o support construction operations with construction layout." Field surveyors employed by contractors at some of these project sites were paid prevailing wages, as set by DLS, for performing the same or similar work.[14]

b. Procedural history. The plaintiffs filed an amended complaint against BSC, alleging that it violated the Prevailing Wage Act by paying them less than the prevailing wage for the work they performed. BSC filed a third-party complaint against MassDOT, essentially seeking indemnification should BSC be held liable to the plaintiffs under the Act. A Superior Court judge granted summary judgment in favor of BSC and MassDOT, on the

_____

December 2016, BSC employed Theurer as a survey instrument operator.

[14] After Theurer resigned from BSC, he worked for another company, earning a prevailing wage for performing "the same exact work" he had performed for BSC on one of the same projects.

ground that BSC was not liable under the Prevailing Wage Act because MassDOT neither sought a prevailing wage rate determination from DLS nor incorporated a prevailing wage rate schedule into the contracts.[15]

2. Discussion. a. Standard of review. "Our review of a decision on a motion for summary judgment is de novo." HSBC Bank USA, N.A., 490 Mass. at 326, quoting Berry, 488 Mass. at 636. Viewing "the evidence in the light most favorable to the party against whom summary judgment entered," HSBC Bank USA, N.A., supra at 326-327, "[s]ummary judgment is appropriate where there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law." Id. at 326. "An appellate court may affirm a correct result based on reasons that are different from those articulated by the judge below." Clair v. Clair, 464 Mass. 205, 214 (2013).

Where, as here, we are called to construe the terms of a statute and its applicability, we begin with the statute's plain language. See Patel v. 7-Eleven, Inc., 489 Mass. 356, 362 (2022), quoting Tze-Kit Mui v Massachusetts Port Auth., 478 Mass. 710, 712 (2018) ("our analysis begins with 'the principal source of insight into legislative intent' -- the plain language

---

[15] The judge did not reach the alternate argument raised by the parties that the Prevailing Wage Act did not apply to the professional services contracts, which instead were subject to the provisions of § 58.

of the statute").  "[C]ourts must look to the statutory scheme as a whole . . . so as to produce an internal consistency within the statute" (citation and quotation omitted).  Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 605 (2019).  Our aim when construing a statute is to construe it "in harmony with prior enactments to give rise to a consistent body of law," if possible.  Alves's Case, 451 Mass. 171, 178 (2008), quoting Hadley v. Amherst, 372 Mass. 46, 51 (1977).  We give deference to agency interpretations in areas where the Legislature has delegated decision-making authority to the agency when the "interpretation is not contrary to the plain language of the statutes or their underlying purposes."  Mullally v. Waste Mgt. of Mass., Inc., 452 Mass. 526, 533 (2008) (opinion letter issued by DLS's predecessor was entitled to deference).

b.  Contract for professional services.  There can be no doubt that the two RFRs and subsequent contracts were issued consistent with or expressly pursuant to the procedures set forth in § 58.  Section 58, which was enacted and became effective during the term of the first contract, sets forth the procedures by which certain State agencies, including MassDOT, are to procure "architectural, engineering[,] or related professional services," defined to include, as relevant to the present case, "land surveying" professional services that are

"required to be performed or approved by a person licensed, registered[,] or certified to provide such services," and other professional services of an architectural or engineering nature or "incidental services, which members of the related professions . . . may logically or justifiably perform," including "construction phase services." G. L. c. 7C, § 58 (a).

Section 58 delineates that the agency seeking such services must publish, as MassDOT did in connection with each RFR, a bulletin requesting that interested firms[16] "submit a statement of qualifications," and then select the firm "on the basis of qualifications for the type of professional services required." G. L. c. 7C, § 58 (c)-(e). As required by § 58, MassDOT solicited pricing information "to determine consultant compensation only after the agency . . . selected a firm and initiated negotiations with the selected firm" (emphasis added). G. L. c. 7C, § 58 (e) (1). And as also required by § 58, MassDOT "negotiate[d] conditions including, but not limited to, compensation level" payable to BSC and that MassDOT, in its sole discretion determined to be "reasonable and fair . . . tak[ing] into account the estimated value of the services to be rendered

---

[16] "Firm" under § 58 includes an entity "authorized by law to practice the profession[] of . . . land surveying." G. L. c. 7C, § 58 (a).

and the scope, complexity[,] and professional nature thereof."
G. L. c. 7C, § 58 (f) (1).

The plaintiffs do not dispute that the second contract
specifically was issued pursuant to § 58; nor do they
meaningfully claim that the first contract was different in
scope or procured in a different manner.[17]  Instead, the
plaintiffs contend that because they performed jobs identical to
those performed by "laborers in the construction of public
works," see G. L. c. 149, § 26,[18] BSC's § 58 contracts with
MassDOT are governed by the Prevailing Wage Act.  We disagree.

By its plain terms, the Prevailing Wage Act applies to "a
contract for the construction of public works."  G. L. c. 149,
§ 27.  See Construction Indus. of Mass. v. Commissioner of Labor
& Indus., 406 Mass. 162, 170 (1989) ("The scheme of G. L.
c. 149, § 27, quite clearly requires that the commissioner set
wage rates for each public works job.  Any time that any public
official or public agency plans to award a public works
contract, the commissioner will set the wage rates applicable to

_____

[17] MassDOT contends, and the plaintiffs do not dispute, that
it has been MassDOT's long-standing practice to hire consultants
through professional services contracts based on their
qualifications, including prior to the enactment of § 58.

[18] General Laws c. 149, § 26, provides that "[t]he rate per
hour of the wages paid to . . . laborers in the construction of
public works shall not be less than the rate or rates of wages
to be determined by the commissioner [of DLS] as hereinafter
provided."

that project"). By contrast, the BSC contracts were untethered to a specific public works construction project, specifying only that the professional engineering field surveying services would be provided on "general highway and bridge projects or as directed as needed" in "District Three" over a period of years.

More importantly, the Legislature set forth a procedure for the selection of firms to provide professional services to agencies, like MassDOT, under § 58 that is incompatible with the procedures under the Prevailing Wage Act. Under the latter, "[p]rior to awarding a contract for the construction of public works," the public official responsible for causing the public works to be constructed must provide to DLS a list of the specific jobs to be employed on the construction project; in turn, DLS then sets the prevailing wage rate for each job based on market conditions, and the agency attaches the resulting schedule to its call for bids. G. L. c. 149, § 27.

Public works construction contracts covered by the Act are publicly advertised and generally are awarded to the lowest bidder. See G. L. c. 30, § 39M (a) (contracts for construction of public works "shall be awarded to the lowest eligible responsible bidder on the basis of competitive bids"). See also Associated Subcontractors of Mass., Inc. v. University of Mass. Bldg. Auth., 442 Mass. 159, 160 (2004) ("By statute, most public construction projects in the Commonwealth are subject to a

statutory competitive bidding process").  Because of the pressure inherent in a low bid contest and the attendant incentive to pay employees less than market wages in order to submit the lowest bid, the Act requires that contractors bidding on a public works construction project be provided with the prevailing wage rate schedule prior to submitting their bids.

The Act further ensures that the contractors use the schedule in submitting their budget proposals by holding them liable to pay their employees according to the prevailing wage rates.[19]  In this manner, "[t]he Act is designed to avoid rewarding a contractor that submits an artificially low bid on public works projects by paying its employees less than the prevailing wage."  Marsh v. Massachusetts Coastal R.R., 492 Mass. 641, 642 (2023).  See Donis v. American Waste Servs., LLC, 485 Mass. 257, 263-364 (2020), quoting Mullally, 452 Mass. at 533 (Act "prevents a contractor from 'offer[ing] its services

_____

    [19] The plaintiffs' contention that the determination whether the Act applies involves a retrospective, fact-intensive inquiry into the work performed by each employee is unworkable as a practical matter and unsupported by the Act, which anticipates prevailing wage rates to be set "[p]rior" to the award of the contract at issue and that contractors will use those rates in determining the labor costs portion of their proposed bids. G. L. c. 149, § 27.  See In re:  Wage Determination Appeal; Central Artery/Tunnel Project; Engineering Field Survey Services Contract (MO25V), at 8 (Dep't of Labor & Indus. July 11, 1995) ("Based on the nature and purpose of the work to be performed under the Survey Contract, the individuals to be employed thereunder will not be engaged 'in the construction of public works'" [emphasis added]).

[to the Commonwealth] for less than what is customarily charged by its competitors for nonpublic works contracts'").  Indeed, the Commonwealth, by ensuring that the low bid contractor's proposal includes labor costs calculated using the prevailing wage, itself pays a premium to ensure that laborers on the Commonwealth's public construction projects are paid the prevailing wage.  See Marsh, supra at 653.

By contrast, professional services firms under § 58 are selected by the agency based on the qualifications of the firms.[20]  The firms submit proposals that delineate the firms' expertise and experience; no information about costs is required or considered by the agency in its selection process.  See G. L. c. 7C, § 58 (e) (1) ("An agency may solicit or use pricing policies and proposals or other pricing information to determine consultant compensation only after the agency has selected a firm and initiated negotiations with the selected firm").  Rather than having DLS set prevailing wage rates "[p]rior to awarding a contract," G. L. c. 149, § 27, § 58 requires

---

[20] See G. L. c. 7C, § 58 (d) ("An agency shall evaluate the firms submitting statements of qualifications, taking into account qualifications, letters of interest and technical proposals, and the agency may consider, but shall not be limited to, considering, ability of professional personnel, past record and experience, performance data on file, willingness to meet time requirements, location, workload of the firm and any other qualifications based on factors that the agency may determine in writing are applicable").

agencies, like MassDOT, to select professional services firms solely on the basis of their qualifications, without any "formal or informal submission of verbal or written estimates of costs or proposals in terms of dollars, hours required, percentage of construction cost or any other measure of compensation."  G. L. c. 7C, § 58 (d).

After a firm is selected based on its qualifications, the agency determines the costs it will pay to this most qualified firm based on the agency's sole determination of reasonableness and fairness.  See G. L. c. 7C, § 58 (f) (1).  Section 58 does not require that wages for the firm's employees be set forth in, appended to, or included by reference in the resulting contract. That the Legislature crafted the § 58 procedures to be incompatible with the Prevailing Wage Act procedures thus buttresses our conclusion that these types of contracts are not governed by the Act.  Indeed, § 58 contracts, because they are not awarded on a low-bid basis, do not trigger the same legislative concern that drives the Prevailing Wage Act.  See Marsh, 492 Mass. at 646-648.

The plaintiffs suggest reading § 58 and the Act to require an agency to select a professional services firm based upon its qualifications and then to use prevailing wage rates to determine the firm's compensation.  This construction is unsupported by the aforementioned process set forth in the Act.

Indeed, as discussed supra, § 58 allows the agency to determine the amount it is willing to pay the consultant based on its (not DLS's) determination, in its sole discretion as to what is reasonable and fair; nothing in § 58 discusses the minimum wages the consultant must pay to its employees or permits a consultant to pass any prevailing wage obligation along to the Commonwealth.  Given these divergent statutory schemes, the plaintiffs' reading is unsupported.

Thus, while field surveying work performed under a contract for the construction of a public works project requires payment of a prevailing wage,[21] such work, when performed under a contract for professional services, does not.  As DLS has concluded, "it is often the case that the prevailing wage requirements will apply to only one of two employees performing similar or identical tasks yet working under different types of contracts" (emphasis added).  In re:  Wage Determination Appeal; Central Artery/Tunnel Project; Engineering Field Survey Services Contract (MO25V), at 13 (Dep't of Labor & Indus. July 11, 1995).

---

[21] The "long-standing administrative interpretation" of DLS, as summarized in a 2011 opinion letter, "reflects that the work of field engineers (surveying) performed under construction contracts let by awarding authorities in the Commonwealth is 'construction work' within the meaning of [G. L.] c. 149, § 27D[,] and, therefore, is subject to the prevailing wage law" (emphasis added).

The plaintiffs were not entitled to a prevailing wage for their work under the professional services contracts.[22,23]

Judgments affirmed.

---

[22] For this reason, we also affirm the grant of summary judgment in MassDOT's favor on BSC's third-party claims.

[23] Because nothing in the record supports the plaintiffs' thinly veiled suggestion that MassDOT colluded with BSC to avoid paying employees a prevailing wage, we need not reach the plaintiffs' posited scenario.  And because we conclude that the contracts were not governed by the Prevailing Wage Act, we do not reach the question whether, if the Act governed the contracts, BSC would be liable, even though MassDOT did not ask DLS to set a prevailing wage rate and did not include a prevailing wage rate schedule in the contracts.